**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHIRAN CANEL, | |
| Plaintiff, | |
| | No. 1:23-CV-17064 |
| v. | |
| SCHOOL OF THE ART INSTITUTE OF CHICAGO and SANDIE YI, | Honorable Nancy Maldonado Magistrate Judge Gabriel Fuentes |
| Defendants. | |

**DEFENDANT THE SCHOOL OF THE ART INSTITUTE OF CHICAGO'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS THE COMPLAINT**

Plaintiff Shiran Canel ("Plaintiff"), a graduate student in the art therapy program at the School of the Art Institute of Chicago ("SAIC") seeks to hold SAIC liable for a wide array of alleged conduct by many individual people at many different times, including before she enrolled. The allegations in Plaintiff's Complaint include serious claims of antisemitism occurring in the wake of Hamas's October 7, 2023, terrorist attack on Israel and the ongoing violence in and around Gaza—an issue of great concern in higher education today. Even acknowledging the seriousness of issues raised in the Complaint, however, all of Plaintiff's legal claims should be dismissed. As to Counts I and II, Plaintiff fails to allege conduct by SAIC amounting to discrimination under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.* ("Title VI"), or the Illinois Human Rights Act, 755 ILCS 5/1-101, *et seq.* ("IHRA"). Count III does not plead any breach of contract. In Count IV, Plaintiff fails to allege the requisite fraudulent conduct or actual damages to state a claim under the Illinois Consumer Fraud Act, 815 ILCS 505/10a ("ICFA"). Finally, as to Count V, the Complaint does not allege the outrageous and extreme conduct required for a claim of intentional infliction of emotional distress ("IIED"), and even if it did, such a claim would be preempted by the IHRA. Accordingly, the Court should dismiss the Complaint in its entirety.

## **FACTUAL ALLEGATIONS**

SAIC disputes many of the factual allegations in the Complaint. Solely for purposes of this Motion to Dismiss, however, SAIC must presume the well-pleaded facts in the Complaint to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The factual allegations described in this Section represent a non-comprehensive set of examples and excerpts from the full set of allegations in the Complaint, provided here as a reference for the arguments that follow in Sections I-IV. SAIC does not intend to capture all of Plaintiff's factual allegations in this Section.

1

Plaintiff is a first-year student in the Masters of Art Therapy and Counseling Program (the "Program") at SAIC. Comp. ¶¶ 1, 2. SAIC is a private, not-for-profit educational institution, located in Chicago, Illinois, which is subject to Title VI and the IHRA. *Id.* at ¶¶ 12-13.

**A. Allegations Relating to Conduct Occurring Before Plaintiff Enrolled at SAIC.**

Although Plaintiff has only been enrolled at SAIC since August 2023, *id.* at ¶ 11, Plaintiff's Complaint contains allegations spanning over six years, including at least five separate allegations relating to conduct that occurred prior to her application to SAIC. *Id.* at ¶¶ 11, 26-28. For example, Plaintiff points to two alleged anti-Israel cartoons published by SAIC's "newsletter" on June 8, 2021, and June 12, 2021, respectively. *Id.* at ¶¶ 19, 21.[1] In addition, the Complaint refers to a Palestinian graduate student's exhibition that was published in 2022, over a year before Plaintiff enrolled at SAIC, but which remains on SAIC's website. *Id.* at ¶ 24. This exhibition depicts systems for underground living in Gaza. *Id.* The former Chair of SAIC's Art Therapy and Counseling Department, Leah Ra'Chel Gipson, served as a thesis advisor for that project. *Id.* at ¶¶ 24-25. According to the Complaint, SAIC hired the exhibition's author as a lecturer in the Program, but she is no longer on the SAIC faculty. *Id.* at ¶ 25. Plaintiff alleges that Professor Gipson is no longer a department chair at SAIC. *Id.*

The Complaint also refers to a 2018 incident in which a student allegedly was told there would not be matzah or Kosher food in SAIC's cafeteria during Passover and that "advertising kosher food may make some students uncomfortable." *Id.* at ¶ 26. In addition, the Complaint describes an incident in a 2018 "Philosophy of Sex" course in which an unnamed professor described a "problematic form[] of BDSM" in which parties acted out a scene between a Nazi and

---

[1] SAIC is not aware of any "newsletter" at SAIC and assumes that Plaintiff means to refer to the award-winning student magazine, *F Newsmagazine*, as the outlet that published these cartoons.

a Jewish person, including specific derogatory language toward the Jewish character. *Id.* at ¶ 27. According to the Complaint, a Jewish student in the class raised concerns to unnamed "school faculty," but these concerns "were met with criticism" from another unnamed SAIC faculty member." *Id.* at ¶ 28. The Complaint does not allege how these events affected Plaintiff. *Id.*

**B. Allegations Relating to International Conflict Not Related to Plaintiff Specifically.**

Plaintiff's time at SAIC has coincided with "Hamas' October 7th terrorist massacre upon Israel." Comp. ¶ 8. Plaintiff "was intensely and intimately impacted by the terror attack." *Id.* at ¶ 9. Plaintiff alleges that SAIC, its faculty, and a large part of its student body had a "perverse reaction to the massacre," responding by "increasing the volume and intensity of their anti-Israel rhetoric and protests." *Id.* at ¶ 40. According to the Complaint, students used campus bulletin boards to post banners "accusing Israel of committing genocide in Gaza" and "created flyers on SAIC letterhead parroting pro-Hamas propaganda" and notifying the student body about "anti-Israel protests, lectures, and other activities." Plaintiff alleges that many SAIC faculty members "penned an open letter justifying the atrocities and lying about what Israel is, and who Israelis and Jews are." *Id.* at ¶ 16. A group of students and alumni also circulated a letter titled "FREE PALESTINE: Letter Regarding Palestine to the Art Therapy Department from MAATC Students" ("November 14 Letter"), which condemned SAIC for its purported conduct and communications vis-a-vis "the ongoing genocide of the Palestinian people at the hands of the settler colonial state of Israel." *Id.* at ¶¶ 48, 49. Plaintiff alleges that the November 14 Letter also stated that antisemitism and anti-Zionism are different and made various requests of SAIC. *Id.* at ¶¶ 48-50.

Plaintiff alleges that members of SAIC's faculty also issued a separate "open letter" (the "Open Letter") in which they stated their "uncompromising solidarity with the Palestinian people in their righteous struggle for self-determination," referring to Israelis as "settlers" and touting

"decolonial resistance." *Id.* at ¶ 16. Plaintiff alleges that, after the publication of the November 14 Letter and the Open Letter, Plaintiff "prepared and circulated" a letter ("Plaintiff's Letter") in which she "rebutted the claims that Israel was a settler colonial state, that Israel was committing a genocide, and that antisemitism was meaningfully distinguishable from anti-Zionism." *Id*. at ¶ 51. Plaintiff alleges SAIC met with those who signed the November 14 Letter and dedicated class time to discuss "the genocide of Palestinians" but did not similarly meet with her. *Id.* at ¶ 52.

Plaintiff further alleges that, in the days after October 7, 2023, one SAIC Professor, Mika Tosca ("Tosca"), posted to "social media" that "Israelis are pigs. Savages. Very very bad people. Irredeemable excrement . . .. May they all rot in hell." *Id*. at ¶ 41. The Complaint does not allege that SAIC condoned this deeply offensive post or that SAIC failed to appropriately respond to this overt prejudice against Israeli citizens. *Id*. Nor does the Complaint allege any relationship between Tosca's personal social media post and SAIC or Plaintiff. *Id*.

### C.  Allegations Regarding Conduct SAIC Addressed.

#### 1.  Concerns About Plaintiff's Admissions Process.

Plaintiff alleges that she submitted a complete application for admission that was "supported by a record of stellar academic performance and enthusiastic recommendations." *Id.* at ¶ 30. Plaintiff further alleges that her admissions interview was conducted by a single faculty member rather than a faculty "panel." *Id.* at ¶ 31. During the interview, the interviewer allegedly "focused on Shiran's ethnic background and nationality," asked Plaintiff questions about "whether the upcoming birth of her second child would undermine her ability to handle the rigors of the program" and about how she would "handle interacting with a Palestinian colleague." *Id.* Plaintiff alleges that the interviewer did not ask her about "the art piece she designated for discussion" but

asked about "a painting of Jerusalem" included in her portfolio. *Id.* at ¶ 32.

Plaintiff's application was denied. *Id*. at ¶ 33. According to the Complaint, Plaintiff appealed the denial and told SAIC of her "concern" that she was denied admission as a result of "antisemitic discrimination against her." *Id.* at ¶ 34. Plaintiff alleges that, when SAIC learned of these concerns, it "engaged outside counsel to conduct a review of [Plaintiff's] admission process." *Id*. at ¶ 35. Plaintiff further alleges that, after a full investigation into both Plaintiff's individual application process and the "Art Therapy Department's graduate admissions process more broadly," *id*., SAIC admitted Plaintiff to its program, offered her a "sincere apology" and explained that the conduct of the interviewer "did not follow SAIC policy or expectations." *Id*. at ¶¶ 36, 37.

### 2. Concerns About Student and Professor Conduct.

With respect to one of her classes on November 17, 2023, Plaintiff alleges that Professor Sandie Yi ("Professor Yi") and Professor Deb DelSignore ("Professor DelSignore") combined their classes and announced that they would "create a communal space for all of us to hold each other accountable through art, writing, and witness reading." *Id*. at ¶¶ 53, 54. According to the Complaint, Professors Yi and DelSignore told Plaintiff "they would do their best not to allow class time to devolve" into discussions about the Middle East and that they "had 'no plans for diverting classes to talk about the conflicts in the Middle East.'" *Id*. at ¶¶ 56, 57. Plaintiff alleges that, despite these plans, one of Plaintiff's classmates shared that she felt "hate and anger towards those who reject[ed] her narrative of an ongoing genocide in Gaza." *Id*. at ¶ 59. Plaintiff does not allege that this classmate's "diatribe" referenced Israeli citizens, Jewish people, or Plaintiff specifically. *Id*. Plaintiff alleges that the professors "sat silently" during this discussion and that similar "student-

led conversations" about the conflict in the Middle East occurred in other classes. *Id*. at ¶ 60.

Plaintiff also complains about one of her classmates, Jannah Sellars ("Sellars"). According to the Complaint, although Plaintiff and Sellars were initially paired together for a presentation, Sellars informed Professor Yi that she was "unable to work so closely with any individual who denies the genocide so clearly taking place before us," and requested that she and Plaintiff present separately. *Id*. at ¶ 62. Plaintiff alleges that Professor Yi permitted Sellars and Plaintiff to present separately. *Id*. at ¶ 64. Plaintiff further alleges that, after Plaintiff's presentation, she received a failing grade for "Professionalism: Collegial + Interpersonal skills," and that Professor Yi explained this grade by noting that Plaintiff demonstrated "discomfort during [her] presentation" and that she mostly avoided interacting with students of color. *Id*. at ¶ 67. According to the Complaint, Plaintiff also failed her "Final Peer Evaluation"; Plaintiff's peers' negative evaluations included concerns of plagiarism and references to "outside factors," which are unidentified in the Complaint. *Id*. at ¶ 67. Plaintiff also alleges that SAIC administrators did not reply to her emails and that her classmates "refuse to share their art supplies" with her and "avoid" or "ignore" her. *Id*. at ¶¶ 45-47, 68. Plaintiff alleges that she submitted these complaints to SAIC. *Id.* at ¶ 69. In response to Plaintiff's complaints, Plaintiff alleges that SAIC engaged outside counsel to investigate Plaintiff's claims of discrimination and harassment. *Id*. at ¶¶ 69, 70. This investigation is ongoing. *Id*. at ¶ 86.

According to the Complaint, after SAIC initiated its investigation into Plaintiff's allegations, Professor Yi announced a change to the final assignment in her class, which was due ten days later. *Id*. at ¶¶ 70, 72. Plaintiff alleges that the new final assignment included two parts and that Part Two asked students to engage in an activity designed to "reduce harm in therapy" and "empathize with clients even when the content of their art upsets or triggers" the future-

therapists. *Id*. at ¶¶ 74, 75. Plaintiff further alleges that Part Two included drawings made by children in distress, including drawings by Palestinian children depicting actions by Israeli soldiers engaged in violence against Gazan families. *Id*. at ¶¶ 78, 79. According to the Complaint, when Plaintiff raised concerns about this assignment, SAIC first offered her the option to seek an alternative assignment and then required Professor Yi to withdraw Part Two of the assignment for all students. *Id*. SAIC is continuing to investigate this incident. *Id*. at ¶ 86.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Mutter v. Madigan*, 17 F. Supp. 3d 752, 757 (N.D. Ill. 2014). To survive such a motion, a complaint must be supported by allegations that, if taken as true, plausibly suggest that the plaintiff is entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Court must accept the well-pleaded allegations in the Complaint as true, but legal conclusions and conclusory statements are not taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Agbefe v. Bd. of Educ. of City of Chi.*, 538 F. Supp. 3d 833, 836 (N.D. Ill. 2021). "A plaintiff must plead particularized factual content, not conclusory allegations, that allows the court to plausibly infer the defendant is liable for the alleged misconduct." *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019). The Court need not strain to find favorable inferences that are not apparent on the face of the Complaint. *Coates v. Ill. State Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir. 1977). Where the well-pleaded facts do not permit the Court to infer more than the possibility of misconduct, the Complaint has not shown that the pleader is entitled to relief. *Id*.

## **ARGUMENT**

I.   **Plaintiff Has Failed to Plead a Claim of Discrimination under Title VI or the Illinois Human Rights Act (Counts I and II).**

The allegations in the Complaint do not state a claim of discrimination under Title VI or

the IHRA. To do so, a plaintiff must allege that (1) they have been intentionally discriminated against on the grounds of race; and (2) the defendant is a recipient of federal financial assistance. *See Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 720 (N.D. Ill. 2015). The complaint must also allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). Here, Plaintiff alleges that SAIC created a hostile environment due to the conduct and communications of her student peers and SAIC faculty. Accordingly, she must demonstrate that the harassment was "so severe, pervasive, and objectively offensive that it . . . depriv[ed her] of access to educational opportunities," and that SAIC was "deliberately indifferent" to the harassment. *See Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014) (citing *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 643 (1999). Because Plaintiff fails to adequately allege that she was subject to sufficiently "severe, pervasive, and objectively offensive" conduct or that SAIC was "deliberately indifferent," the Court should dismiss her discrimination claims.

### A. Plaintiff's Allegations Show that SAIC Was Not Deliberately Indifferent.

With respect to at least three of the key incidents alleged in the Complaint, Plaintiff alleges that SAIC already addressed them or is in the process of addressing them, negating any claim that SAIC was "deliberately indifferent." *See Jauquet v. Green Bay Area Catholic Educ., Inc.*, 996 F.3d 802 (7th Cir. 2021) (affirming dismissal of Title VI/Title IX claims where the defendant school had responded promptly to student's complaints). The standard of deliberate indifference sets a high bar for Plaintiff. *See Doe v. Galster*, 768 F.3d at 619. Although Plaintiff accuses SAIC of exhibiting deliberate indifference to her emails expressing concerns about her safety, *see* Comp. at ¶¶ 104-105, 119, SAIC had no obligation to address her concerns by responding to her emails when it was addressing her concerns in other ways, such as through investigation and remediation.

8

*See Jauquet*, 996 F.3d at 809 ("Title IX liability does not give victims license to demand particular remedial actions from the school"). Indeed, the Seventh Circuit has indicated that a school is not liable unless its response is "clearly unreasonable," and even a negligent response by the school is not unreasonable. *See id.*; *Doe*, 768 F.3d at 619.

First, Plaintiff raises concerns about her process for admission to SAIC. But Plaintiff admits that SAIC took her concerns seriously and thoroughly investigated them. *Id.* at ¶ 35. Plaintiff further admits that SAIC corrected the issue with respect to Plaintiff, admitting her to the program and apologizing to her for falling short of its own policies and expectations. *Id.* at ¶¶ 36, 37. Second, Plaintiff raises concerns about her classmates and her experience at SAIC, including the fact that other students refused to share their art supplies with her and avoided or ignored her and the fact that Sellars requested to work separately from Plaintiff. *Id.* at ¶¶ 45-47. As Plaintiff alleges, SAIC again engaged outside counsel to investigate her concerns, and that investigation is ongoing. *Id.* at ¶¶ 69, 70, 86. Third, Plaintiff alleges that, when she raised concerns about the final assignment in Professor Yi's course, SAIC offered her the option to seek an alternative assignment and then required Professor Yi to withdraw Part Two of the assignment for all students. *Id.* Moreover, Plaintiff alleges that SAIC is investigating this incident for concerns related to bias. *Id.* at ¶ 86. The allegations in the Complaint show SAIC's response to Plaintiff's concerns and efforts to address them. As such, Plaintiff's Title VI claim cannot stand. *See Jauquet*, 996 F.3d at 808.

**B.     Many of Plaintiff's Key Allegations Relate to Conduct Not Connected to Her Experience as a Student at SAIC.**

Plaintiff's allegations that do not relate to her experience as a student at SAIC do not support a claim under Title VI or the IHRA. "[I]t is not relevant to plaintiffs' Title VI claims that [school] employees were aware of, had responded to, or had failed to respond to other incidents . . . that did not involve the plaintiffs." *K.W. v. Sch. Dist. of Somerset*, No. 21-cv-634-WMC (W.D.

9

Wis. 2022).[2] For example, the Complaint refers to two cartoons, both of which were published in the SAIC student magazine in June 2021, well before Plaintiff's enrollment at SAIC. Compl. at ¶¶ 19-21. Plaintiff does not plead any factual allegations connecting these cartoons to Plaintiff's experience as a student at SAIC. *See generally id.* Similarly, Plaintiff relies on the supposed experiences of unnamed other students to bolster her purported claims. Plaintiff alleges that an unnamed "former student of the program" graduated with a thesis "premised on the discriminatory lie that Israel is a genocidal colonial-settler state." *Id.* at ¶ 25. Likewise, Plaintiff alleges that, in 2018, someone from SAIC told an unnamed Jewish student that there would not be matzah or kosher food available in the cafeteria during Passover "and indicated that advertising kosher food may make some students uncomfortable." *Id.* at ¶ 26. Plaintiff also alleges that, in 2018, a teacher used an example in class that involved "a nazi/Jew scene" with vulgar and demeaning language involved. *Id.* at ¶ 27. With these examples, Plaintiff fails to draw a connection to her own experience five years later, under different circumstances. In *C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 542 (7th Cir. 2022), the Seventh Circuit explained that past harassment under Title VI or Title IX was not actionable if it merely raised concerns for future harassment. By the same token, Plaintiff's allegations about incidents that allegedly happened to other students, in past years, under other circumstances, are not relevant to Plaintiff's Title VI or other claims.

C.     **Many of Plaintiff's Allegations Relate to Conduct Not Within SAIC's Control.**

Much of the conduct Plaintiff describes in the Complaint is not material because it was undertaken by individual students or employees, not by SAIC. For instance, Plaintiff discusses the conduct of Sellars and complains that some of her classmates ignore her, refuse to share their art supplies, submit negative and discriminatory peer feedback on her classwork, or avoid her

---

[2] This unpublished case is submitted as Exhibit A.

altogether. Comp. at ¶¶ 61-62, 68. Plaintiff further complains that faculty members signed onto the November 14 Letter, or the Open Letter, but she does not allege that SAIC sanctioned those letters or that the letters targeted her or amounted to anything more than an expression of the faculty members' political views. In this area, *Beaulieu v. Ashford University* is instructive. No. 20-cv-2117, 529 F. Supp. 3d 834 (N.D. Ill. 2021) (dismissing Title VI claim pursuant to Rule 12(b)(6)). In *Beaulieu*, a student was unhappy with the way instructors and administrators at his university treated him and handled his complaints. *Id.* at 841. The court granted a motion to dismiss the Title VI claim under Rule 12(b)(6). *Id.*; *see also Khan*, 147 F. Supp. 3d at 721.

### D. Many of Plaintiff's Allegations Amount to Description, Characterization, or Inflammatory Rhetoric, Not Factual Allegations.

Many of the remaining allegations in the Complaint amount to mere generalizations, characterizations, or inflammatory rhetoric. These sorts of statements do not amount to well-pled factual allegations. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303,* No. 13-CV-3106, 2017 WL 5971985 (N.D. Ill. Dec. 1, 2017) ("While a minor amount of surplus material in a complaint is not enough to frustrate Rule 8's goals, unnecessary length coupled with repetitiveness, needless complexity, and immaterial allegations are grounds for dismissal"); *Cielak v. Nicolet Unified Sch. Dist.*, No. 22-CV-819-JPS, 2023 WL 6388933, at *8, n. 11 (E.D. Wis. Sept. 29, 2023).

The set of statements in the Complaint meeting this description is so extensive that SAIC cannot list it comprehensively here. To illustrate the point, however, Plaintiff's most egregious generalizations, characterizations, and inflammatory rhetoric includes the following:

- ". . . following Hamas' October 7[th] terrorist massacre upon Israel, SAIC's campus *came alive with hatred*," Comp. at ¶ 8 (emphasis added);
- "Disdain towards Jews and Israelis flowed freely through the halls of the school," *id.*;
- Plaintiff "has endured an endless tide of hatred, discrimination, and exclusion," *id.* at ¶ 9;
- "The harassment and discrimination against Shiran is *a moral stain on SAIC*," *id.* at ¶ 10 (emphasis added);

11

- [Having described an alleged graduate exhibition from 2022 that "is simply a souped-up plan for more effective terror tunnels"], "It is difficult to fathom the school giving such prominence to a thesis that proposed more efficient or aesthetic cross-burnings on lawns, or the means of terrorizing any other population of people. *But for SAIC, when it comes to Israelis and Jews, anything goes*," *id.* at ¶ 24 (emphasis added).

These generalizations highlight the gravity of the underlying events and the intensity of opinions on issues related to Gaza, but they are not material to Plaintiff's legal claims. *See, e.g., Bd. of Educ. of Thornton Twp. High Sch. Dist. 205 v. Bd. of Educ. of Argo Comm. High Sch. Dist. 2017 et al.*, No. CIV A 06 C 2005, 2006 WL 1896068, at *2 (N.D. Ill. July 10, 2006) (striking inflammatory references in complaint that were "inappropriate hyperbole"); *Ind. Land Trust # 3082 v. Hammond Redev. Comm.*, No. 2:21-CV-201-JEM, 2022 WL 594895, at *4 (N.D. Ind. Feb. 28, 2022).

## II. Plaintiff Has Failed to Plead a Claim of Breach of Contract (Count III).

Plaintiff's breach-of-contract claim should be dismissed because Plaintiff improperly attempts to hold SAIC contractually liable for its existing statutory obligations and to assert a non-cognizable claim of educational malpractice. To the extent Plaintiff alleges that SAIC breached its nondiscrimination or similar policies, *id.* at ¶¶ 131, 135, the Court should reject Plaintiff's claim because "[t]he promise to do something one is already legally obligated to do is not consideration, and no new obligation is thereby created." *Harris v. Adler Sch. of Prof. Psych.*, 723 N.E.2d 717, 722 (Ill. App. Ct. 1999) (affirming dismissal of contract claim against graduate school for alleged breach of nondiscrimination provisions in school catalog); *Galligan v. Adtalem Global Educ. Inc.*, No. 17 C 6310, 2019 WL 423356, at *6 (dismissing student's contract claim against university for allegedly breaching its obligation to comply with federal and state laws). SAIC has an independent, statutory obligation not to discriminate. *See, e.g.,* 42 U.S.C. § 2000d.

In addition, Plaintiff alleges a breach in the manner in which her courses were taught, but such claims for educational malpractice are not cognizable. For example, Plaintiff alleges that

SAIC "breached its promise to give [her] the class she signed up for. It is unclear how analyzing cartoons of an Israeli father and son fighting, or how drawings of libelous depictions of imaginary Israeli soldiers targeting innocents has anything whatsoever to do with the course as described." Comp. at ¶ 145. This sort of claim is not legally enforceable. *See Polley v. Northwestern Univ.*, 560 F. Supp. 3d 1197, 1206-07 (N.D. Ill. 2021) (quoting *Waugh v. Morgan Stanley & Co.* 359 Ill. Dec. 219, 966 N.E.2d 540, 554 (Ill. App. 2012) ("[C]laims sounding in educational malpractice, that is, claims alleging negligent instruction, are not cognizable in Illinois")).

### III. Plaintiff Has Failed to Plead a Claim under the Illinois Consumer Fraud Act (Count IV).

The Court should dismiss Plaintiff's purported claim under the Illinois Consumer Fraud Act, 815 ILCS 505/10(a) (the "ICFA") because she fails to allege any deceptive act or practice or any actual damages—let alone damages proximately caused by SAIC's supposed "deception." To state a claim under the ICFA, a plaintiff must plead with particularity that "(1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005). Plaintiff alleges that SAIC violated the ICFA because, *inter alia*, it "falsely led Plaintiff to believe that [it] would apply, enforce, and follow the rules and policies, and the commitments contained, reflected, embodied and set forth in SAIC's policies, rules, student and faculty handbooks, course descriptions, and other materials." Comp. at ¶ 152.

As set forth in Section II, above, Plaintiff fails to show any policy or statement that SAIC has not enforced, especially as SAIC's investigation into Plaintiff's allegations is ongoing. Comp. at ¶¶ 69-70, 86. Moreover, Plaintiff fails to allege she has suffered any actual damages, let alone

13

damages proximately caused by SAIC's supposed "deception." *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (requiring plaintiff to show they suffered "actual damage" due to the defendant's violation of the act). The only actual damages Plaintiff alleges are "the loss of value of the tuition and fees she has paid SAIC." Comp. at ¶ 156. Plaintiff does not allege, however, that SAIC did not provide her with the courses in which she enrolled, receiving both instruction and course credit. *See generally* Compl. She does not allege that she withdrew from SAIC, that SAIC suspended or dismissed her, or that SAIC withheld course credit from her. *Id.* Rather, the Complaint suggests that Plaintiff participated in Professor Yi's final assignment, completing the course. *See* Comp. at ¶¶ 80-85. Accordingly, Plaintiff's purported ICFA claim should be dismissed. *See, e.g., Nelson v. Ashford Univ., LLC*, No. 16-cv-3491, 2016 WL 4530325, at *3 (N.D. Ill. Aug. 29, 2016) (dismissing ICFA complaint for failure to allege actual damages).

## IV. Plaintiff Cannot Prevail on Her Claim of Intentional Infliction of Emotional Distress (Count V).

Plaintiff's claim of intentional infliction of emotional distress ("IIED") against SAIC should be dismissed because she fails to plead the requisite outrageous conduct, and the claim is preempted by the IHRA. To state a claim for IIED, the conduct alleged must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency." *See Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997). Put differently, the conduct must be so severe it "exceeds all bounds of human decency . . . to the extent that no reasonable person could be expected to endure." *Schumacher v. J.P. Morgan & Co., Inc.*, No. 98 C 108, 1999 WL 58554, at *5 (N.D. Ill. Feb. 3, 1999). Plaintiff alleges not a single act or omission by SAIC that is sufficiently outrageous as to support a claim of IIED.

Furthermore, Plaintiff's IIED claim cannot proceed because it is preempted by the IHRA. The IHRA provides that "no court of this state shall have jurisdiction over the subject of an alleged

civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(C). This Court has previously held, "The IHRA confines claims of civil rights violations under Illinois law to proceedings under the IHRA." *Hubbard v. Dollar Tree Stores, Inc.*, No. 04 C 0012, 2005 WL 589005, at *5 (N.D. Ill. Mar. 9, 2005) (cited in *Olojo v. Kennedy-King Coll.*, No. 05 C 6234, 2006 WL 1648441, at *8 (N.D. Ill. June 7, 2006)). The IHRA prohibits liability for state common law claims that are "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself." *Maksimovic v. Tsogalis*, 177 Ill.2d 511 (Ill. 1997).

Plaintiff's intentional infliction of emotional distress claim is inextricably linked to the purportedly discriminatory conduct she alleges: Plaintiff assert an IHRA claim against SAIC based on the purportedly hostile environment and discriminatory harassment she allegedly experienced as a student. *See generally* Comp. at ¶¶ 116-126. Along similar lines, Plaintiff alleges that SAIC's "extreme and outrageous conduct" was its "intentional conduct in discriminating against [Plaintiff]," including, among other things, "intentionally subjecting [Plaintiff] to a knowingly hostile environment, facilitating discrimination and harassment against [Plaintiff] by her peers . . . and by allowing hateful anti-Israeli and antisemitic rhetoric to flourish all around [Plaintiff] . . ." *Id.* at ¶¶ 160-161. As in *Olojo*, Plaintiff's IIED claim is based on the same factual predicate as her IHRA discrimination and harassment claim. Therefore, the IIED claim is preempted by the IHRA.

## CONCLUSION

For these reasons, the Complaint fails to state a claim on which relief can be granted and should be dismissed.

Respectfully submitted,

SCHOOL OF THE ART INSTITUTE OF
CHICAGO

By: /s/ John W. Borkowski
     One of Its Attorneys

John W. Borkowski
Karen Courtheoux
Katherine Tierney
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
P: (312) 526-1634
john.borkowski@huschblackwell.com
Karen.courtheoux@huschblackwell.com
Katherine.tierney@huschblackwell.com

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney hereby certifies that on March 4, 2024, he electronically filed the

foregoing **DEFENDANT THE SCHOOL OF THE ART INSTITUTE OF CHICAGO'S**

**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk

of the Court using the CMECF system which will send notification to the following individuals

listed below:

Steven P. Blonder
Laura Elakayam
Much Shelist P.C.
191 North Wacker Drive
Suite 1800
Chicago, IL 60606
sblonder@muchlaw.com
lelkayam@muchlaw.com

Avraham E. Aizenman
Steelman Advocate PC
3840 Via De La Valle
Del Mar, CA 92014
eli@steelmanadvocate.com

Jonathan B. Blakley
Susan J. Best
Maximilian J. Bungert
Gordon Rees Scully Mansukhani, LLP
1 N Franklin, Suite 800
Chicago, IL 60606
jblakley@grsm.com
sbest@grsm.com
mbungert@grsm.com

/s/ John W. Borkowski