**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHIRAN CANEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:23-CV-17064 |
| v. ) | |
| ) | Honorable Nancy Maldonado |
| SCHOOL OF THE ART INSTITUTE OF ) | |
| CHICAGO and SANDIE YI, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT SANDIE YI'S 12(b)(6) MOTION TO DISMISS**
**COUNT V OF PLAINTIFF'S COMPLAINT**

Defendant, Sandie Yi ("Yi"), by and through her counsel, Gordon Rees Scully Mansukhani, LLP, moves to dismiss Count V of Plaintiff's Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of this motion, Yi states as follows:

**INTRODUCTION**

Plaintiff, a master's art student at the School of the Art Institute of Chicago ("SAIC"), alleges in her Complaint that she has suffered from discrimination, harassment and retaliation based on her race, religion, national origin and ancestry through conduct perpetrated by administrators and faculty at her school. As a result of this alleged conduct, she has brought claims against the school pursuant to federal and state civil rights statutes, and one count against Yi for intentional infliction of emotional distress ("IIED").

Plaintiff's IIED claim consists of boilerplate and conclusory allegations which do not meet the necessary pleading standard and otherwise fail to state a claim for the relief sought. Further, even if the pleading were facially sufficient, dismissal of Plaintiff's IIED claim would still be warranted, as the claim is preempted in its entirety by the Illinois Human Rights Act ("IHRA"). Indeed, the conduct complained of is a civil rights violation based on alleged discrimination with no independent basis in

- 1 -

tort. For these reasons, and as set forth in detail below, Count V of Plaintiff's Complaint should be dismissed with prejudice and Defendant Yi should be dismissed from this case.

**RELEVANT PLEADED FACTS[1]**

Plaintiff is Israeli and Jewish, and is currently enrolled as a master's student in the Art Therapy and Counseling program at SAIC. ECF No. 1 at ¶¶ 1, 11. SAIC is a private, not-for profit-educational institution that receives federal funding and is categorized as an "institution of … higher education" and "place of public accommodation" within the definitions provided by the IHRA. *Id.* at ¶¶ 12-13. Yi is a member of the SAIC faculty, and taught a class entitled Materials and Media in Art Therapy in which Plaintiff was enrolled during the 2023-2024 academic year. *Id.* at ¶¶ 15, 61.

Plaintiff claims that prior to and during her enrollment at SAIC, she was subjected to various forms of discriminatory, antisemitic conduct by SAIC administrators and faculty which excluded her from opportunities afforded to other SAIC students on the basis of her status as Israeli and Jewish. *See id.* at ¶¶ 3-9. She claims that Yi in particular took a "leading role in these discriminatory and exclusionary acts." *Id.* at ¶ 9.

Specifically, Plaintiff alleges that, following the October 7th, 2023, attack by Hamas on Israel, Yi took various actions which allegedly discriminated against Plaintiff. *See id.* at ¶¶ 52-85. The first such action concerns a joint class session organized by Yi and another SAIC faculty member following the circulation of two letters (one of which was authored and published by Plaintiff) concerning the Israsel-Palestine conflict. *Id.* at ¶¶ 48-53. The joint session sought to create a "communal space" for students to communicate through art, writing, and witness reading. *Id.* at ¶ 53. Plaintiff claims that, although she expressed to Yi that she did not feel comfortable participating in the joint session, Yi assured her that it would not be used as a forum to discuss current conflicts in the Middle East, and that she and the other faculty member would intervene if participants attempted to broach such topics.

---

[1] Defendant treats Plaintiff's alleged facts as true only for purposes of this Motion.

*Id.* at ¶¶ 56-57. According to Plaintiff, based on these assurances, she agreed to participate in the joint session. *Id.* at ¶ 58. Plaintiff claims that the session nonetheless featured discussions regarding the ongoing situation in Gaza, and that Yi made no attempt to intervene. *Id.* at ¶ 59. In subsequent classes, Yi is alleged to have facilitated additional discussions which included student comments "expressing vitriol towards Israelis." *Id.* at ¶ 60.

Plaintiff next alleges that when a student indicated she no longer felt comfortable working with Plaintiff, Yi allowed their joint presentation to be split in half, thereby causing the final product to suffer due to a lack of cohesion. *Id.*, at ¶¶ 61-66. According to Plaintiff, the student stated that she was "simply unable to work with any individual who denies the genocide so clearly taking place before us." *Id.* at ¶ 62. Yi then allegedly deducted points from Plaintiff's grade on the presentation, and noted in her feedback that Plaintiff "mostly interacted with non-BIPOC-presenting students" and that she generally seemed uncomfortable during the presentation. *Id.* at ¶ 67.

On December 5, 2023, Plaintiff notified SAIC administrators that she wished to initiate a formal investigation into her claims of discrimination against Yi and other SAIC faculty. *Id.* at ¶ 71. Plaintiff alleges that, in retaliation, Yi made changes to the Materials and Media in Art Therapy final assignment, which "inject[ed] the traumatizing and emotionally charged issues of the past several weeks." *Id.* at ¶ 73. The changes to the assignment included a new instruction asking students to reflect on their ability to remain professional and empathetic when consulting clients on subject matter that may be upsetting or triggering to them personally. *Id.* at ¶¶ 74-75. The assignment also asked students to review certain images to demonstrate their ability "to examine [their] own readiness for doing the hard work as an art therapist." *Id.* at ¶ 75. Plaintiff alleges that, in an effort to continue to harass and isolate her, Yi selected images depicting Israeli soldiers committing acts of violence against Gazan families, and verbal abuse between a father and son speaking Hebrew. *Id.* at ¶ 78-80.

Finally, Plaintiff alleges that Yi made changes to the grading requirements to give more weight to peer evaluations, class participation, and collegiality among classmates in an attempt to harm Plaintiff's grades and ability to pass the course, allegedly because Yi knew other students were attempting to isolate Plaintiff. *Id.* at ¶¶ 68, 85.

## LEGAL STANDARD

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The factual allegations of a plaintiff's complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Further, the Court is not required to ignore facts that undermine a plaintiff's claim. *Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir. 1992). Instead, a plaintiff may "plead himself out of court" by alleging facts establishing that a defendant is entitled to prevail on the motion. *McCormick v. City of Chicago,* 230 F.3d 319, 325 (7th Cir. 2000).

## ARGUMENT

I. **Count V Fails to State a Claim for Intentional Infliction of Emotional Distress and Should be Dismissed.**

To survive Rule 12(b)(6) dismissal of an IIED claim, a plaintiff must establish that: (1) a defendant's conduct was "truly extreme and outrageous;" (2) the defendant intended for their conduct to inflict severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *Watanabe v. Loyola University of Chicago*, No. 99 C 4820, 2000 WL 876983, at *6 (N.D. Ill. July 3, 2020) (citing *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill.App.3d 30, 38 (1st Dist. 1997)); *Lopez v. City of Chicago*,

- 4 -

464 F.3d 711, 720 (7th Cir. 2006). Here, Plaintiff's allegations, even if taken as true, do not show that Yi engaged in extreme or outrageous conduct towards Plaintiff, nor do they establish that Yi intended to cause Plaintiff severe emotional distress, or that Plaintiff in fact suffered severe emotional distress due to any conduct on Yi's part. The pleadings are no more than conclusory recitations of the elements of the claim. Therefore, Count V of Plaintiff's Complaint as to Yi should be dismissed.

### A. Count V Fails to Allege Extreme and Outrageous Conduct to Support an IIED Claim.

Extreme and outrageous conduct of the kind that creates liability for IIED is defined as conduct that exceeds all bounds of human decency and that is regarded as intolerable in a civilized community. *Lewis v. School Dist. #70*, 523 F.3d 730, 747 (7th Cir. 2008). This is a high standard – the tort "does not extend to mere insults indignities, threats, annoyances, petty oppressions, or other trivialities," nor to conduct which is "inconsiderate, rude, vulgar, uncooperative, unprofessional and unfair." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (quoting *McGrath v. Fahey*, 126 Ill.2d 78, 86 (1988)); *Oates v. Discovery Zone*, 116 F.3d 1161, 1174 (7th Cir. 1997). To serve as the basis for recovery, the alleged conduct must be such that "recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim[:] Outrageous!" *Id.* at 490 (quoting *Doe v. Calumet City*, 161 Ill.2d 374, 392 (1994)).

Applying this high standard to IIED claims brought by university students against their schools, courts have frequently dismissed IIED claims at the pleading stage because the alleged conduct did not rise to the level of extreme and outrageous. *See Totten v. Benedictine University*, No. 20 C 6107, 2021 WL 3290926, at *11-12 (N.D. Ill. Aug. 2, 2021) (holding that while the university's conduct toward the plaintiff during a Title IX investigation may have been "rude, uncooperative, and unfair," it was not extreme and outrageous); *Watanabe*, 2000 WL 876983 at *6 (declining to find extreme and outrageous conduct where university administrators prevented plaintiff from completing a class she needed to graduate and gave her a negative evaluation which prevented her from finding a

job);[2] *Doe v. Brandeis Univ.*, 177 F.Supp.3d 561, 617 (D. Mass. 2016) ("Although [the university's] actions in [plaintiff's] case may have been unreasonable and unfair, the facts do not appear to constitute the sort of targeted deliberate, and malicious conduct that is required for an IIED claim").

Similarly, courts have declined, in a variety of other analogous contexts, to find that alleged conduct rose to the level of extreme and outrageous. *See Bannon v. Univ. of Chi.*, 503 F.3d 623, 630 (7th Cir. 2007) (no extreme and outrageous conduct where plaintiff complained of "being excluded from some meetings, being denied the responsibility of organizing other meetings, being forced to attend a few unpleasant sessions with … [the] general counsel that led to no disciplinary action, and having a mean boss who sometimes told her she was stupid"); *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (concluding that an employee did not state an IIED claim even though she alleged, inter alia, that she had been forced out of a management position, excluded from office activities, threatened with discipline, and falsely accused of having poor sales, all purportedly on the basis of her race).

Here, Plaintiff alleges that Yi coerced her into participating in a joint discussion session "on the situation in the middle east" (¶¶ 58-59), gave her negative evaluations on certain aspects of her coursework (¶ 67), changed coursework to include material which Plaintiff interpreted as harassing and isolating (¶ 80), and otherwise failed to ameliorate Plaintiff's social isolation in the school community after Plaintiff responded to a student letter relating to the Israel-Palestine conflict (¶ 68); *see also supra*, pp. 2-4. Based on the case law outlined above, such conduct does not rise to the level of extreme and outrageous to sustain a claim for IIED. Therefore, Count V of Plaintiff's Complaint against Yi, which alleges that Yi's conduct was extreme and outrageous in a conclusory fashion, should be dismissed. *See McKay v. Town and Country Cadillac, Inc.*, 991 F.Supp. 966, 972 (N.D. Ill. 1997)

---

[2] The *Watanabe* court further noted that "giving a student a negative evaluation, especially if it is true, does not form the basis for an IIED claim." *Watanabe*, 2020 WL 876983, at *6.

(disregarding plaintiff's conclusory IIED allegations and finding that conduct described throughout pleading was not extreme and outrageous).

      **B.    Count V Fails to Allege Severe Emotional Distress or that Yi Intended to Cause Plaintiff Severe Emotional Distress.**

The emotional distress required to sustain an IIED claim "must be *severe*." *Honaker*, 256 F.3d at 495 (quoting *Welsh v. Commonwealth Edison Co.*, 306 Ill.App.3d 148 (1st Dist. 1999)(emphasis in original)). Illinois courts have explained that "although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable. *Id.* Instead, the distress inflicted must be so severe that "no reasonable man [or woman] could be expected to endure it." *Id.*

Courts have dismissed IIED claims when plaintiff's pleadings lack the factual detail required to render them plausible with respect to the severity of the emotional distress and intent on a defendant's part to cause it. *See Mnyofu v. Bd. Of Educ. Of Rich Twp. High Sch. Dist. 227*, 832 F.Supp.2d 940, 950 (conclusory allegations that plaintiff suffered severe emotional distress not sufficient to survive motion to dismiss); *Nardella v. Leyden High Sch. Dist. 212*, No. 15 C 4885, 2017 WL 1806589, at *5 (N.D. Ill. May 5, 2017) (same). For example, in *Doe v. Columbia College*, the plaintiff claimed that he was discriminated against on the basis of his gender based on certain actions taken by university administrators in connection with a Title IX investigation, and also brought a claim for IIED based on the same conduct. *Doe v. Columbia College Chicago*, 299 F.Supp.3d 939, 949 (N.D. Ill. 2017). The court found that his IIED claim contained "boilerplate allegations" regarding the university's intention to inflict emotional distress or the degree of emotional harm plaintiff had suffered, and granted the school's motion to dismiss. *Id.* at 964.

Here, Count V of Plaintiff's complaint contains only boilerplate allegations that Plaintiff suffered from "severe emotional distress" and that Yi intended to inflict emotional distress. *Id.* at ¶¶ 163-164. Absent more, and in light of her failure to allege that kind of extreme and outrageous conduct

necessary to sustain an IIED claim, Plaintiff's pleadings do not show that she suffered the degree of harm required to support a claim of this kind. She indicates throughout the Complaint that she felt "isolated" and "unsafe," but absent more detailed allegations describing how these feelings manifested or the specific parties responsible for causing these conditions, her allegations are insufficient under the high pleading standard for IIED claims. Therefore, Count V of Plaintiff's complaint against Yi should be dismissed.

**II.     Even if Plaintiff has Sufficiently Pled an IIED Claim, it is Still Preempted by the Illinois Human Rights Act and Should Be Dismissed.**

The IHRA, with its "comprehensive scheme of remedies and administrative procedures," was intended by the Illinois legislature upon its passage to be the "exclusive source for redress of alleged human rights violations." *Olojo v. Kennedy-King College*, No. 05 C 6234, 2006 WL 1648441, at *8 (N.D.Ill. June 7, 2006) (quoting *Mein v. Masonite Corp.*, 109 Ill.2d 1, 6 (1985)). The IHRA vests the Illinois Human Rights Commission with exclusive jurisdiction over allegations of civil rights violations brought under Illinois law. 775 ILCS 5/8-111(D) (2008) (stating that "no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act"); *see also Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006). Therefore, where a tort claim is "inextricably linked" to a civil rights violation defined under the Act such that there is no independent basis for the action apart from the IHRA itself, the claim is preempted and subject to dismissal. *Naeem*, 444 F.3d at 602 (citing *Maksimovic v. Tsogalis*, 177 Ill.2d 511 (1997)); *see also Mein*, 109 Ill.2d at 6; *Blount v. Strand*, 232 Ill.2d 302, 315 (2011); *Beauliu v. Ashford University*, 529 F.Supp.3d 834, 851 (N.D. Ill. 2021). To avoid preemption, the civil rights aspect of a plaintiff's tort claim must be "merely incidental" to what is otherwise an ordinary common law tort. *DiPerna v. Chicago School of Professional Psychology*, No. 14-cv-57, 2014 WL 4167491, at *2 (N.D.Ill. Aug. 21, 2014) (citing *Naeem*, 444 F.3d at 603).

Courts applying these principals have routinely held that a plaintiff's IIED claims are preempted by the IHRA where the underlying conduct consists primarily of alleged civil rights

violations codified (and prohibited) under the Act. *See Martin v. Cook County, Ill.*, No. 17 C 2330, 2018 WL 1942654, at *7 (N.D. Ill. Apr. 25, 2018) (holding that IHRA preempted the plaintiff's IIED claim where the claim was based entirely on the allegations and conduct supporting the plaintiff's religious discrimination claim and the IIED allegations were offensive only insofar as they concerned the defendant's religious discrimination); *see also Sanglap v. Lasalle Bank, FSB*, 345 F.3d 515, 519 (7th Cir. 2003) (finding preemption of plaintiff's IIED because, absent a discriminatory bent, it would require a court to find that closing his bank account for *any* reason would constitute extreme and outrageous conduct); *and see Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922 (7th Cir. 2017) (holding that a plaintiff's IIED claims were preempted by IHRA because the underlying conduct was "inextricably linked" to harassment violations prohibited under the Act). Whether the IHRA preempts a plaintiff's IIED claim therefore depends on whether the "claim rests [on] behavior that would be a tort no matter what the motives of the defendant." *Martin*, 2018 WL 1942654 at *6 (quoting *Naeem*, 444 F.3d at 605). If removing the civil rights component of the IIED claim by stripping it of allegations related the plaintiff's religious beliefs "takes the air out of the case," then the claim is preempted. *Id.* (quoting *Sanglap*, 345 F.3d at 519); *Krocka v. City of Chicago,* 203 F.3d 507, 511 (7th Cir. 2000) (affirming dismissal of plaintiff's IIED claim when the claim was supported exclusively by alleged discriminatory conduct already protected by the IHRA).

Courts in this district have reached the same conclusion regarding IIED claims against higher education institutions. *See e.g. Watanabe*, 2000 WL 876983, at *6 (holding that a student would be unable to establish her IIED claim absent her allegations of discrimination under the IHRA and that it was therefore preempted). In *Olojo*, the plaintiff, a full time nursing student at Kennedy-King College in Chicago, filed suit against the school and one of its instructors for religious discrimination under the IHRA after the instructor made various statements disparaging her religion, declined to award her extra credit points in a class necessary to meet the program's graduation requirements, and prevented

her from attending a comprehensive review session for graduating students. *Olojo*, 2006 WL 1648441, at *1-2. The plaintiff separately brought a claim for IIED which relied on the same operative facts. *Id.* The court, noting that the IHRA prohibits discrimination on the basis of religion in the higher education context, found that the plaintiff's IIED claim was preempted because it relied on "the same factual predicates as her IHRA discrimination, harassment, and retaliation claims" and "did not establish or properly allege elements of the tort independent of any legal duties created by the [IHRA]." *Id.*, at *8.

Here too, the entire basis for Plaintiff's IIED claim is alleged conduct protected by the IHRA. *See supra*, pp. 2-4. Specifically, the IHRA prohibits discrimination, harassment and retaliation by higher education institutions and their representatives based on race, national origin, religion and ancestry. *See* 775 ILCS 5/1-102 (A); 775 ILCS 5/5A-101(F); 775 ILCS 5/5A-102(C). Plaintiff's IIED claim is based on allegations that she was subjected to a discriminatory and hostile educational environment due to her race, national origin, religion and ancestry. *See supra*, pp. 2-4; ECF No. 1, ¶¶ 115-126, 159-164. Absent these allegations, Plaintiff is unable to establish facts to support her IIED claim. Plaintiff's IHRA and IIED claims are therefore "inextricably linked" such that the latter is subsumed by the former. Because Plaintiff's IIED claim is preempted by the IHRA, Count V against Yi should be dismissed.

## CONCLUSION

For the reasons stated herein, Defendant Sandie Yi respectfully requests that this Court enter an Order dismissing Count V of Plaintiff's Complaint against her, and for any other relief this Court deems fair and just.

Dated:  March 4, 2024 　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　SANDIE YI


　　　　　　　　　　　　　　　　　　　　By: /s/ *Susan J. Best*　　　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　　One of Her Attorneys

Jonathan B. Blakley
Susan J. Best
Maximilian J. Bungert
Gordon Rees Scully Mansukhani, LLP
1 N Franklin, Suite 800
Chicago, IL 60606
P:       (312) 565-1400
Fax:    (312) 565-6511
jblakley@grsm.com
sbest@grsm.com
mbungert@grsm.com

## CERTIFICATE OF SERVICE

    I, Maximilian J. Bungert, an attorney of record, hereby certify that I served a copy of the foregoing **Defendant Sandie Yi's 12(b)(6) Motion to Dismiss Count V of Plaintiff's Complaint** by e-filing it with the Court's CM/ECF system this 4th day of March, 2024, which sends an electronic notification to all counsel of record.

                                                                         By: */s/ Maximilian J. Bungert*
                                                                        Maximilian J. Bungert, Atty No. 6338774