**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHIRAN CANEL,<br><br>         Plaintiff,<br><br> v.<br><br>SCHOOL OF THE ART INSTITUTE OF CHICAGO, and SANDIE YI,<br><br>         Defendants. | Case No. 23 cv 17064<br><br>Judge Maldonado |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
SCHOOL OF THE ART INSTITUTE OF CHICAGO'S MOTION TO DISMISS**

Steven P. Blonder (6215773)
Joanne A. Sarasin (6191817)
Laura A. Elkayam (6303237)
**MUCH SHELIST, P.C.**
191 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312) 521-2402
sblonder@muchlaw.com
jsarasin@muchlaw.com
lelkayam@muchlaw.com


Avraham E. Aizenman
**STEELMAN ADVOCATE, P.C.**
3840 Via De La Valle
Del Mar, CA 92014
(424) 242-4603
eli@steelmanadvocate.com
(admitted pro hac vice)

## INTRODUCTION

SAIC's effort to dismiss Shiran's Title VI claim rests on mischaracterizations of the Complaint, a narrowing of her allegations to a hostile environment claim only, and inferences it draws in its favor rather than hers. It is also premised on unsupported (and false) assertions—such as its claim that the school remediated the alleged discrimination—that cannot serve as a basis for Rule 12(b)(6) dismissal. Shiran's breach of contract claim likewise withstands dismissal because, contrary to SAIC's argument, Shiran alleges SAIC breached promises and representations that extend well-beyond its legal obligation to not discriminate, and her claim cannot be fairly read as one for "educational malpractice." Shiran's consumer fraud claim is also adequately pleaded, including allegations of actual damages suffered because of SAIC's deception. Finally, because Shiran pleads conduct that is extreme and outrageous not only because it is discriminatory, her IIED claim is not preempted by the IHRA.

## ARGUMENT

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Under rule 12(b)(6) courts "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [its] favor." *Cheli v. Taylorville Cmty. Sch. Dist.*, 986 F.3d 1035, 1038 (7th Cir. 2021). A complaint survives dismissal if it contains "enough facts to state a claim to relief that is plausible on its face." *Id.* "'Plausibility' is not a synonym for 'probability' in this context," and requires only "more than a sheer possibility that a defendant has acted unlawfully.' *Walgreen Co. v. Peters*, No. 21 CV 2522, 2024 WL 50379, at *3 (N.D. Ill. Jan. 4, 2024). "The question is not whether the [plaintiff] will prevail when it presents its evidence, but whether its allegations, *taken as true*, state a claim…" *U.S. S.E.C. v. Benger*, 931 F. Supp. 2d 901, 903 (N.D. Ill. 2013). Under this standard, SAIC's Motion should be denied.

**I.  Shiran states a claim under Title VI and SAIC's arguments urging dismissal do not extend to the entire cause of action, rest on distortions of the Complaint, and are based on distinguishable case law.**

### A. SAIC does not challenge Shiran's Title VI direct discrimination claim.

As an initial matter, SAIC's Motion is fatally flawed because it shrinks Shiran's Title VI claim to one of "hostile environment" only. (Mot. pg. 8) (plaintiff alleges "that SAIC created a hostile environment due to the conduct and communications of her student peers and SAIC faculty.") SAIC's Motion ignores (and does not challenge) that Shiran also alleges SAIC directly discriminated against her. For this reason alone, Shiran's Title VI claim survives dismissal. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (Rule 12(b)(6) "doesn't permit piecemeal dismissals of parts of claims…").

SAIC seeks complete dismissal of the Title VI claim, but ignores that Shiran has pled direct discrimination, in addition to hostile environment. Indeed, the case law SAIC relies upon deals only with peer-on-peer conduct analyzed through the (parallel Title IX) hostile environment framework. (Mot. pp. 8-9) (citing *Jaquet v. Green Bay Area Catholic Educ., Inc.*, 996 F.3d 802 (7th Cir. 2021) and *Doe v. Galster*, 768 F.2d 611 (7th Cir. 2014)). But, as those same cases make clear, direct discrimination and hostile environment claims are distinct. *Jaquet*, 996 F.3d at 807 ("A plaintiff may allege a 'direct' or 'institutional' Title IX[1] violation by pleading facts to show that the school itself discriminated against a person on the basis of their [protected characteristic] *[and] may also pursue a theory of 'indirect' discrimination* by way of student-on-student harassment" that is "severe…") (emphasis added).

Direct discrimination and hostile environment claims have different prima facie elements; only the latter implicates questions of severe or pervasive conduct, and deliberate indifference. To

---

[1] *Galster*, 768 F.2d at 617 (Title VI and Title IX make "the same guarantee but substitute 'on the basis of sex' for 'on the ground of race, color, or national origin'…a decision interpreting one generally applies to the other.")

state a claim for direct discrimination, a plaintiff must allege: 1) the educational institution received federal funding; 2) plaintiff was excluded from participation in or denied the benefits of an educational program, and 3) the educational institution discriminated against plaintiff based on race, color, or national origin. *Jauquet*, 996 F.3d at 810. Title VI hostile environment claims, on the other hand, require a plaintiff to show severe or pervasive harassment and deliberate indifference to known acts of harassment. *Id*; *L. L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545, 548 (3d Cir. 2017) (describing separate elements for each theory, while "mindful" that the burden of stating a prima facie case for direct discrimination "is not onerous."); *McCarter v. Univ. of NC at Chapel Hill,* 2024 WL 1142518, at *6 (M.D.N.C. Mar. 15, 2024) (different elements for direct discrimination versus hostile environment claims under Title VI).

Though not challenged by SAIC, Shiran clearly pleads these elements. She pleads, and SAIC does not dispute, that the institution receives federal funding. (Compl. ¶ 100.) And she pleads that she was excluded from participation in and denied the full benefits of SAIC's educational programs as a result of discrimination, including disparate treatment. Shiran alleges that SAIC violated Title VI "through its acts and omissions . . . subject[ing] Shiran to discrimination," (Compl. ¶ 102); by "actively and intentionally engag[ing] in [a] pattern of severe or pervasive discrimination," (Compl. ¶ 107); by "directly and intentionally discriminat[ing] against Shiran, with Shiran's actual or perceived shared ancestry or ethnic characteristics a substantial or motiving factor," (Compl. ¶ 108); by conduct that "had, and continue[s] to have, a differential or disparate impact upon Shiran," (Compl. ¶ 109); and by "fail[ing] to act or [] act[ing] with leniency or delay in applying its policies…where the victim was a Jewish or Israeli student, including Shiran." (Compl. ¶ 110.)

These unchallenged allegations, along with the facts Shiran alleges in support of them, are sufficient to state a claim for direct discrimination under Title VI – a theory of liability SAIC ignores. *See e.g., Marcial v. Rush Univ. Med. Ctr.*, No. 16-CV-6109, 2017 WL 2180503, at *4 (N.D. Ill. May 18, 2017) ("Plaintiff alleges she was evaluated disparately, was disciplined more severely, and was treated less favorably" than her peers…"[she] alleges that this intentional discrimination included…being harassed through false negative evaluations…requiring daily evaluations of her work, unlike other CRNA students; [and] having her complaints of harassment ignored…While [the school] may question whether Plaintiff is able to prove those claims, that is not the issue…Plaintiff has alleged sufficient facts [under Title VI] to survive a motion to dismiss."); *Brown v. William Rainey Harper Coll.*, No. 16 C 1071, 2017 WL 3278822, at *5 (N.D. Ill. Aug. 1, 2017) ("at the motion to dismiss stage [] her allegations that white students who were in a similar position received more favorable treatment is sufficient to state a claim under Title VI."); *Parker v. Franklin Cnty. Cmty. Sch. Corp.*, 667 F.3d 910, 921 (7th Cir. 2012) ("'Discrimination' is a term that covers a wide range of intentional unequal treatment; by using such a broad term, Congress gave the statute a broad reach.")

**B. Shiran's Title VI hostile environment claim survives dismissal because – contrary to SAIC's erroneous arguments based on its own version of the facts – the Complaint in no way forecloses SAIC's deliberate indifference to harassment.**

Shiran pleads facts which, taken as true, demonstrate SAIC's deliberate indifference to Shiran's reports of a hostile campus and classroom environment. The Complaint describes Shiran's repeated requests to the administration and faculty to share what, if anything, would be done to ensure her safety on campus after explosive, vitriolic, and discriminatory hostility unfolded post-October 7th; the school's radio silence in response; Shiran's complaints of Professor Yi's abusive

and discriminatory conduct; and the school's failure take reasonable action (or any action) designed to remediate this hostile environment. (Compl. ¶¶ 40–43, 44-47, 68.)

SAIC boldly argues that "Plaintiff's allegations show that SAIC was not deliberately indifferent." (Mot. pg. 8). In other words, SAIC insists that allegations that it opened an investigation, by itself, eliminates any possibility of establishing "deliberate indifference" by SAIC. This position is meritless. So too is SAIC's assertion that Plaintiff's only support for a claim of deliberate indifference is that SAIC failed to respond to Shiran's e-mails.

> **1. Shiran does not allege that SAIC was required to respond to her emails as a matter of law, rather that the school's non-responsiveness is one of several signs of its deliberate indifference.**

SAIC argues that "[a]lthough Plaintiff accuses SAIC of exhibiting deliberate indifference to her emails expressing concerns about her safety…SAIC had no obligation to address her concerns by responding to her emails when it was addressing her concerns in other ways, such as through investigation and remediation." (Mot. pg. 8.) But Shiran's Title VI claim is not that SAIC was deliberately indifferent to her e-mails, but that it was deliberately indifferent to the hostile campus and classroom environment in which she was supposed to learn. The school's lack of response to her communications expressing those concerns (sent to her department chair, and the provost, among others) is alleged to be *one* sign of that indifference. (Compl. ¶¶ 44-47.)

More importantly, SAIC's claim that it did not need to engage with Shiran's e-mails to the provost and her department head because, at that time, it was instead "addressing her concerns in other ways, such as through investigation and remediation," is a proclamation of a fact nowhere gleaned from the Complaint, which indicates an investigation commenced long after Shiran continued to endure further abuse and made additional complaints. This assurance from SAIC, that

5

it was handling things appropriately *behind the scenes*, is belied by the continuing abuse SAIC subjected Shiran to, and cannot serve as the basis for dismissing her Title VI claim out of hand.

SAIC cites to *Jaquet* to argue that Shiran does not have "license to demand particular remedial actions from the school." (Mot. pg. 9) (citing 996 F.3d 802). But nowhere in her Complaint does Shiran "demand" an email response. Instead, her Complaint alleges that the school's overall reaction to her reports of discriminatory harassment was one of deliberate indifference (as evidenced, *in part*, by the fact that no one could be bothered to reply to her emails seeking assurances of her safety). Indeed, one would assume the school would be eager to let her know that it was, in fact, investigating and remediating, if that was truly the case.

Moreover, this case is nothing like those SAIC cites for this point. In *Jaquet*, the Seventh Circuit upheld dismissal of a Title IX complaint for failure to allege deliberate indifference. 996 F.3d at 806. The school there "responded promptly to [the] complaints, and the [pleading did] not contain any allegations that the bullying persisted beyond" the school's intervention. *Id.* at 808. School officials "suspended the primary perpetrator," met with the plaintiff "several times, including once for the express purpose of allowing [her] to voice her concerns as a victim," "offered to change her seat in class, and facilitated an apology" from the abusive classmate. *Id.* The Court held "these acts all demonstrate that the school was not deliberately indifferent to [the] harassment." *Id.* Likewise in *Galster,* the Seventh Circuit upheld summary judgment on a Title VI claim where the school "responded adequately to each incident they knew about," immediately contacted the offending student, involved guidance counselors, responded "swiftly and reasonably" to further incidents, scheduled recurring meetings with the victim, and "took measures to reduce contact" between one of the aggressors and victim. *Id.* The school "completed a thorough investigation, including interviewing witnesses, within twelve days of learning of the severe

harassment." *Id.* In finding the school was not "deliberately indifferent," the Court noted it was not a case "where the school district responded with half-hearted remedial measures." *Id.* at 621.

There are no allegations here that SAIC responded "promptly" or "swiftly and reasonably" to anything. There are no allegations that the school "immediately spoke with" any individuals (student or faculty) regarding Shiran's reports; or that it took any disciplinary actions, or measures to alleviate the classroom environment. There are no allegations that the abusive conduct stopped once the school commenced its (still) pending investigation which it starts and pauses as it pleases, and about which Shiran has heard nothing of substance. The buzz of immediate and intentional remedial activity the schools undertook in *Jaquet* and *Galster* is precisely the opposite of SAIC's deliberately "half-hearted" response to Shiran's concerns. *L.W. v. Roman Cath. Archdiocese of Indianapolis, Inc.*, No. 121CV02397JMSMJD, 2022 WL 2209914, at *11 (S.D. Ind. June 21, 2022) ("Defendants reliance on *Jauquet*…is misplaced…*Jauquet* and other cases Defendants cite involved situations where the defendant took substantially more action than Plaintiffs allege was taken here.") SAIC's reliance on *Jauquet* and *Galster* is baffling given these discrepancies.

### 2. That SAIC reversed its initial, discriminatory decision to reject Shiran's admission does not diminish the plausibility that it was deliberately indifferent to the hostile environment she suffered upon enrollment.

SAIC argues that Shiran has not sufficiently pled "deliberate indifference" by pointing to her allegations that the school investigated and ultimately reversed its discriminatory denial of her admission. (Mot. pg. 9) ("But Plaintiff admits that SAIC took her concerns seriously and thoroughly investigated them").[2] That SAIC ultimately allowed her to enroll after excluding her

---

[2] SAIC cites to paragraph 35 of the Complaint for the proposition that Plaintiff "admits" that SAIC "took her concerns seriously and thoroughly investigated them." But Paragraph 35 describes SAIC as being initially "resistant[]" to her concerns, states that the school hired outside counsel, and that "*[a]ccording to SAIC*, it conducted a full investigation…" Indeed, in the very next paragraph, Shiran describes how she was never made privy to any of the specifics of the investigation, or the extent to which it was thorough. (Compl. ¶ 36.) This is one of example of SAIC misconstruing the pleadings, and urging inferences in its favor, to bolster its arguments for dismissal.

7

from the program on a discriminatory basis, does not negate the fact that discrimination occurred. More importantly here, SAIC's backpedaling from their initial act of discrimination against Shiran does not in any way show that it was *not* deliberately indifferent to the hostile environment she endured once she became a student. The Court should reject this straw man argument.

### 3. Neither SAIC's pending investigation, nor its claim to lack "control," give it a pass under Title VI.

SAIC argues that it could not have been deliberately indifferent, as a matter of law, because it is "investigating." (Mot. pg. 9) ("As Plaintiff alleges, SAIC again engaged outside counsel to investigate her concerns, and that investigation is ongoing…") It does not provide a single case that schools cannot be found "deliberately indifferent" as a matter of law because they've merely opened an investigation; its case law involves remedial *action* not mere inconclusive investigation.

The Complaint acknowledges that, since Shiran became a student and began suffering a hostile environment, SAIC eventually commenced an investigation (with no particular findings, outcomes, recommendations, or next steps). And though SAIC claims it also took action by "offer[ing] her the option to seek an alternative assignment and then require[ing] Professor Yi to withdraw" a portion of the discriminatory final exam, (Mot. pg. 9), the Complaint actually alleges that SAIC "first directed Shiran to request an accommodation from Professor Yi," (*i.e.*, instructed her to plead with her professor who had already proven abusive and retaliatory) and then, upon the threat of legal action, relented and required withdrawal of Part 2 of the exam. (Compl. ¶ 82.) The significance of SAIC's withdrawal of a portion of the exam, only after Shiran threatened legal action, and not of its own volition, is a question of fact for the jury, not a basis for dismissal.

Moreover, SAIC's suggestion that its unresolved, post-admission "investigation" removes it from the realm of deliberate indifference, if adopted, would create a perverse rule shielding a discriminatory institution from Title VI scrutiny upon the simple act of "opening" an investigation

8

– an event that, absent any specific contours or outcomes, has no inherent significance or value. Schools could thus permit known, festering harassment, then declare the *existence* of an investigation to end a Title VI inquiry. SAIC provides no support for this senseless proposition.

SAIC's argument that it cannot be considered "deliberately indifferent" because it is currently investigating is all the more specious when viewed alongside its claim that the conduct is "not within SAIC's control." (Mot. pg. 10.) SAIC argues that "much of the conduct Plaintiff describes in the Complaint is not material because it was undertaken by individual students or employees, not by SAIC." (Mot. pg. 10.) But this is irrelevant. Under the law, schools are liable under Title VI precisely for deliberate indifference to the harassing environment created by students and/or teachers – this is the near-universal fact pattern. And, at least according to the Supreme Court, school officials have "comprehensive authority" to control the conduct in their schools. *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646, 119 S. Ct. 1661, 1673, 143 L. Ed. 2d 839 (1999) ("On more than one occasion, this Court has recognized the importance of school officials' 'comprehensive authority . . . , consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools.'").[3]

SAIC claims "[i]n this area, *Beaulieu v. Ashford University* is instructive." (Mot. 11) (citing 529 F. Supp. 3d 834, 850 (N.D. Ill. 2021); and *Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 720 (N.D. Ill. 2015)). In support, SAIC offers only the following two sentences: "In *Beaulieu*, a student was unhappy with the way instructors and administrators at his university treated him and handled his complaints. The court granted a motion to dismiss the Title VI claim under Rule 12(b)(6)."

---

[3] SAIC's own policies also belie its claimed lack of control. (Compl. ¶ 133); https://www.saic.edu/sites/default/files/2024-03/OSA-08212023_Orientation_Handbook_Student.pdf ("Authority of SAIC over Student Conduct") ("SAIC has the authority to pursue reports of any student conduct that adversely affects the SAIC community…").

9

(Mot. 11.) These cases are not "instructive" as SAIC suggests. The word "control" is nowhere in the *Beaulieu* opinion. Rather, the court in *Beaulieu* found that a pro se plaintiff's complaint that was "light on facts and heavy on conclusions" still "teeters on the edge of stating a claim, but at this point it is too conclusory," because it failed to allege facts "suggesting a causal connection between his race and the instructor's treatment." *See* 529 F. Supp. 3d at 850. SAIC does not argue there is a similar deficiency here. Neither *Beaulieu* nor *Khan* provide any support for SAIC's contention that conduct by individual students or school employees is immaterial because it is not within SAIC's control.

### 4. SAIC's remaining arguments do not justify dismissal.

SAIC advances two additional arguments, neither of which are of any apparent consequence on the Motion. First, SAIC argues "Plaintiff's allegations about incidents that allegedly happened to other students, in past years, under other circumstances, are not relevant to Plaintiff's Title VI or other claims." (Mot. 10.) This is wrong. *Kane v. Loyola University of Chicago*, No. 22 CV 6476, 2024 WL 1157396, at *9 (N.D. Ill. Mar. 18, 2024) (noting caselaw where allegations of prior incidents "in which the defendant university was accused of mishandling claims of sexual harassment plausibly support the inference that the university had a policy of practice of deliberate indifference.") (citing *Vander Pas v. Bd. of Regents of Univ. of Wisconsin Sys.*, No. 21-CV-1148-JPS, 2022 WL 1597423, at *6 (E.D. Wis. May 19, 2022)).

Second, it argues, "[m]any of the remaining allegations in the Complaint amount to mere generalizations, characterizations, or inflammatory rhetoric.[4] These sorts of statements do not

---

[4] SAIC concedes that "[t]hese generalizations highlight the gravity of the underlying events and the intensity of opinions on issues related to Gaza," but somehow it still believes "they are not material to Plaintiff's legal claims." (Mot. 12.) Why SAIC considers "the gravity of the underlying events" not material to, say, Shiran's susceptibility to emotional distress, or "the intensity of opinions on issues related to Gaza" not relevant to, say, the severity of the hostile environment on campus is unclear.

amount to well-pled factual allegations." (Mot. 11.) SAIC does not contend that the Complaint does not contain other, admittedly relevant allegations. Nor does it attempt to argue that, without the claimed irrelevant or inflammatory allegations, the Complaint fails to state a claim. It is unclear what objective SAIC is targeting with these arguments; whatever it may be getting at here—whether it is attempting to move the Court to strike some allegations or perhaps to suggest that without them, Shiran's Complaint fails—the Court should consider its arguments waived. *See U.S. S.E.C. v. Benger*, 931 F. Supp. 2d 901, 903 (N.D. Ill. 2013) ("[T]he brief does not get very specific, and [the] arguments do not get developed until [the] reply brief. But of course, that is too late."); *Harper v. Vigilant Ins. Co.,* 433 F.3d 521, 528 (7th Cir. 2005) ("The argument is more developed in Harper's reply brief, but this is too little, too late.")

## II. Shiran's breach of contract claim is based on promises that go well beyond SAIC's statutory obligations, and is not a claim for "educational malpractice."

SAIC makes two arguments to defeat Shiran's breach of contract claim, both of which are wrong: First, that "Plaintiff improperly attempts to hold SAIC contractually liable for its existing statutory obligations," and second, that Plaintiff alleges a non-cognizable claim for educational malpractice. (Mot. pg. 12.)

The Complaint describes at length and with specificity the statements, representations, and promises that provide the basis for Shiran's breach of contract claim. (Compl. ¶¶ 130–147.) SAIC appears to take issue only "[t]o the extent Plaintiff alleges that SAIC breached its nondiscrimination or similar policies . . . ," for which "SAIC has an independent statutory obligation not to discriminate." (Mot. 12.) Shiran agrees. To the extent some of SAIC's nondiscrimination or similar policies express only a legal obligation not to discriminate, those representations do not form the basis of her breach of contract claim. Indeed, SAIC cites only to cases where the students' claimed source of the contractual promise was *solely* the school's non-

11

discrimination policy that closely tracked bare minimum statutory obligations. *Harris v. Adler Sch. of Prof. Psych.*, 723 N.E.2d at 721 (relied-on policy was that the educational program was administered "on a nondiscriminatory basis subject to the provisions of all civil rights and statutes."); *Galligan v. Adtalem Global Educ. Inc.*, No. 17 C 6310, 2019 WL 423356, at *2 (N.D. Ill. Feb. 4, 2019) (policy promised school would provide "an environment free of unlawful harassment based on disability," and would comply with "applicable laws regarding discrimination…"). Because those promises were "only a general reference of adherence to existing law concerning discrimination," the courts rejected the students' breach of contract claims – each noting "the promise to do something one is already legally obligated to do is not consideration." *Id*. at 722; 2019 WL 423356 at * 6.

Shiran's claim rests on the representations and promises SAIC made, including those in its nondiscrimination policies, that go *beyond* its legal obligations. (*See, e.g.*, Compl. ¶ 132) (SAIC commitment "to assembling a diverse community of faculty, students, and staff and to nurturing and creating an environment in which different perspectives and backgrounds can be heard, valued, and utilized"); ¶ 141 (Provost's promises that Shiran could "hold and express [her] views without fear of repercussion," and that SAIC will do "everything in its power to ensure that all of our students have the latitude to freely express their thoughts, whether popular or not.")

She alleges it was these and other representations that constituted express and implied promises that the school was a uniquely well-equipped atmosphere for her to learn (and not just an institution that refrained from discrimination), and that persuaded her to pay tuition and enroll in the school, in spite of her apprehensions. (Compl. ¶¶ 5, 143.) *Cf. Abrams v. Illinois Coll. of Podiatric Med.*, 77 Ill. App. 3d 471, 477, 395 N.E.2d 1061, 1065 (1979) (handbook provision was *not* a valid basis for breach of contract claim, in part, because (unlike here) "it was *not*

communicated to the plaintiff in such a way as to invite the payment of tuition in reliance thereon."); *Hernandez v. Illinois Inst. of Tech.*, 63 F.4th 661, 667 (7th Cir. 2023) ("A contract between a private institution and a student confers duties upon both parties which cannot be arbitrarily disregarded and may be judicially enforced…Even absent a formal document signed by both…with the word 'Contract' at the top of the page, a student may establish that an implied contract existed between himself and the university…") (internal citations omitted).

SAIC also misconstrues as an "educational malpractice" claim Shiran's description of SAIC's breach by diverting class time and assignments in a Media in Art Therapy course for her targeted harassment by the professor. Shiran does not take issue with "the manner in which her courses were taught," as SAIC claims. (Mot. 12). Shiran accuses SAIC of breaching its contractual obligation by, in part, failing to deliver the educational courses it promised. Presumably, SAIC will not attempt to defend using class time and course assignments to harass and discriminate against Shiran, as alleged in the Complaint, as a legitimate pedagogical "manner in which her courses were taught." And the one case SAIC relies upon, *Polley v. Nw. Univ.*, 560 F. Supp. 3d 1197, 1207 (N.D. Ill. 2021), held it was "***inappropriate*** to convert the Complaint into an educational malpractice claim" because it found it was *"**not** required to evaluate the University's efforts to educate students [but] only [to] evaluat[e] the contractual obligations…" Id.* (emphasis added). Shiran does not ask the Court to evaluate any pedagogical judgements that were conceivably educational in nature; she is asking the Court to enforce the school's promise that SAIC would *not* be a place where the classroom is weaponized to target her for discrimination.

**III. SAIC seeks to dismiss Shiran's consumer fraud claim by supplanting her allegations with its own, and wrongly asserting she has failed to plead damages.**

As to Shiran's consumer fraud claim, SAIC makes two flawed arguments. First, that she "fails to show any policy or statement that SAIC has not enforced, especially as SAIC's

13

investigation into Plaintiff's allegations is ongoing." (Mot. 13.) But Plaintiff is not required to "show" anything; to survive dismissal, Plaintiff need only allege. *See Genzyme Corp. v. Discount Drugs Wisconsin, Inc.*, No. 08 C 5151, 2010 WL 3721473, at *2 (N.D. Ill. Sep. 13, 2010). And the Complaint is replete with allegations that SAIC failed to comply with its own rules, policies, and commitments. (*See, e.g.*, Compl. ¶¶ 47, 59–60, 68.)

SAIC also argues the claim should be dismissed because "Plaintiff fails to allege she has suffered any damages, let alone damages proximately caused by SAIC's supposed 'deception.'" (Mot. pp. 13-14.) But the allegations in the Complaint and all reasonable inferences therefrom describe how Shiran paid tuition and fees she would not have incurred had she known the truth about the campus environment. (Compl. ¶ 155.) According to SAIC, that's not enough—to claim damages, Shiran must withdraw or be dismissed from the program. (Mot. 14.) None of the authorities SAIC cites say any such thing, nor would such a rule make any sense.

**IV.     Shiran alleges extreme and outrageous conduct, and her IIED claim is not preempted by the IHRA.**

Shiran alleges conduct that could be deemed extreme and outrageous even if it wasn't based on discriminatory animus against her protected class. As argued more fully in response to Yi's Motion to Dismiss, the conduct at issue was both extreme and outrageous in its own right and therefore actionable, while also being discriminatory. (*See* Pl. Resp. to Yi Motion to Dismiss, pg. 12). Regardless of whether it was *discriminatory*, SAIC and Professor Yi's treatment of Shiran in the immediate aftermath of a gruesome terrorist attack on her family, friends, and community, is sufficient to support a claim for the common law tort of intentional infliction of emotional distress without reference to the legal duties the IHRA imposes. The fact that Shiran alleges the harassment was motivated by racial animus does not change that. *See, e.g.*, *Spring-Weber v. City of Chicago*, 2017 U.S. Dist. LEXIS 54244, at *30 (N.D. Ill. Apr. 10, 2017) (finding IIED claim not preempted

14

by IHRA, despite finding the offending conduct was motivated by plaintiff's disability and therefore also supported a civil rights claim).

SAIC also asserts that "Plaintiff's IIED claim cannot proceed because it is preempted by the IHRA." (Mot. 14.) Here, SAIC cites the correct authorities, but misreads the scope of IHRA preemption. As the Supreme Court of Illinois explained, the rule "is not that the Act precludes the circuit court from exercising jurisdiction over all tort claims related to [a civil rights violation]." *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 517 (1997). "Rather, [preemption] depends upon whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself." *Id.* Put differently, "a common law tort claim is not inextricably linked with a civil rights violation where a plaintiff can establish the necessary elements of the tort independent of any legal duties created by the [IHRA]." *Id.* at 519; *Goodlet v. City of Chicago*, No. 22 C 570, 2023 WL 2499862, at *4 (N.D. Ill. Mar. 14, 2023) ("IHRA preemption does not turn on whether the same facts supporting the IIED claim also support a [] discrimination claim…Rather, the concrete question to ask is whether the plaintiff states a valid common-law claim without needing to rely on the rights and duties created by the [IHRA]."). The IHRA does not preempt Plaintiff's IIED claim, which is premised on conduct that is extreme and outrageous, not merely discriminatory.

## CONCLUSION

For the foregoing reasons, SAIC's Motion to Dismiss should be denied.

Respectfully submitted,

**SHIRAN CANEL**

By: <u>*/s/ Steven P. Blonder*</u>
     One of her attorneys

     Steven P. Blonder (6215773)
     Joanne A. Sarasin (6191817)
     Laura A. Elkayam (6303237)
     **MUCH SHELIST, P.C.**
     191 N. Wacker Drive, Suite 1800
     Chicago, Illinois 60606
     (312) 521-2402
     sblonder@muchlaw.com
     jsarasin@muchlaw.com
     lelkayam@muchlaw.com

     Avraham E. Aizenman
     **STEELMAN ADVOCATE, P.C.**
     3840 Via De La Valle
     Del Mar, CA 92014
     (424) 242-4603
     eli@steelmanadvocate.com
     (admitted pro hac vice)