IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHIRAN CANEL,<br><br>                                Plaintiff,<br><br>     v.<br><br>SCHOOL OF THE ART INSTITUTE OF CHICAGO, and SANDIE YI,<br><br>                                Defendants. | Case No. 23 cv 17064<br><br>Judge Maldonado |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
<u>SANDIE YI'S MOTION TO DISMISS</u>**

Plaintiff, Shiran Canel ("Plaintiff" or "Shiran"), by and through her attorneys, responds as follows in opposition to Defendant Sandie Yi's ("Yi") Motion to Dismiss (the "Motion") Plaintiff's intentional infliction of emotional distress ("IIED") claim:

**INTRODUCTION**

When the allegations and reasonable inferences of Shiran's Complaint are taken as true, what emerges is an extreme and outrageous story: Professor Yi wielded her position of power over Shiran, her only Israeli student, to specifically target her for abuse and ostracization in the classroom, in her testing, and in her grading, all while knowing Shiran was particularly susceptible to emotional distress in the wake of Hamas' unprecedented massacre of Israelis, and the subsequent cacophony of faculty and student voices justifying these atrocities – which targeted Shiran's family and friends in the most gruesome way imaginable.  Yi's contention that *no* reasonable jury could find her targeted and calculated abuse of Shiran extreme and outrageous is simply wrong. Average members of the community hearing this story would exclaim "Outrageous!" Indeed, they have.

1

Yi cannot escape liability for this tortious conduct by relying upon IHRA preemption because her conduct was extreme and outrageous independent of its discriminatory nature – she repeatedly used her position of power to target a knowingly vulnerable, grieving, and traumatized student for abuse and ostracization; that the IHRA may *also* prohibit the conduct because it resulted from discriminatory animus is insufficient to trigger preemption. Yi's tortious conduct stands on its own two feet, without reference to the legal duties imposed by the IHRA. Yi's Motion should be denied.

## ARGUMENT

Plaintiff has sufficiently pled a claim against Yi for IIED and her claim is not preempted by the IHRA. In reviewing Yi's Motion, this Court "construe[s] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [its] favor." *Cheli v. Taylorville Cmty. Sch. Dist.*, 986 F.3d 1035, 1038 (7th Cir. 2021). A complaint survives dismissal if it contains "enough facts to state a claim to relief that is plausible on its face." *Id.* (internal citations omitted).

To state an IIED claim under Illinois law, a plaintiff must allege facts sufficient to infer: (1) conduct that is truly extreme and outrageous; (2) that the defendant intended that her conduct inflict severe emotional distress, or knew that there was at least a high probability that it would, and; (3) that the conduct in fact caused severe emotional distress. *Summerland v. Exelon Generation Co.*, 510 F. Supp. 3d 619, 628 (N.D. Ill. 2020) (citing *McGrath v. Fahey*, 126 Ill.2d 78, 533 N.E.2d 806, 809 (1988)).

Yi makes four arguments. First, she claims the Complaint lacks allegations of extreme and outrageous conduct. Second, she claims Plaintiff has not alleged she suffered emotional distress. Third, Yi claims there are no allegations she acted with intent. And, finally, she claims she cannot

2

be subject to tort liability because the IHRA preempts Plaintiff's claim against her. For the reasons below, the Court should reject each of her arguments.

I. **Shiran's allegations describing Professor Yi's pattern of targeted abuse adequately plead extreme and outrageous conduct.**

Extreme and outrageous conduct is conduct that "go[es] beyond all possible bounds of decency and [is] regarded as intolerable in a civilized community." *Id.* Extreme and outrageous conduct is determined based on the totality of the facts and circumstances of a particular case. *See Franciski v. University of Chicago Hospitals*, 338 F.3d 765, 769 (7th Cir. 2003).

"[T]he Illinois Supreme Court has noted three factors used to evaluate the alleged outrageousness of a defendant's conduct." *Id.* (citing *McGrath*, 533 N.E.2d at 809–11). The first factor is the level of power or control the defendant has over the plaintiff. "The more power or control the defendant has over the plaintiff, the more likely the conduct will be deemed extreme." *Id.* The second factor asks whether, in exercising its power or control over plaintiff, the defendant reasonably believed its objective was legitimate." *Id.* And the third factor is whether "defendant was aware the plaintiff was peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." *Id.* (internal quotations omitted). Here, all three factors weigh heavily against Yi and, taken together with Shiran's allegations of her malicious conduct, show conduct that is plausibly extreme and outrageous.

A. **The extreme and outrageous nature of Professor Yi's conduct is underscored by her position of authority over Shiran, her student.**

"Illinois cases in which intentional infliction of emotional distress has been sufficiently alleged have in fact very frequently involved a defendant who stood in a position of power or authority relative to the plaintiff." *McGrath*, 533 N.E.2d at 809–10; *Milton v. Illinois Bell Tel. Co.*, 101 Ill. App. 3d 75, 79, 427 N.E.2d 829, 832 (1981) ("The extreme and outrageous nature of the

3

conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives him actual or apparent power to damage the plaintiff's interests.") (citing Prosser on Torts, 4th Ed., p. 56).

Here, Professor Yi occupied a position of authority over Shiran. *McGrath*, 533 N.E.2d at 809–10 (noting "school authorities" as a classic example of individuals with power over an IIED plaintiff); *Black as next friend of J. D. v. Littlejohn*, No. 19 C 2585, 2020 WL 469303, at *8 (N.D. Ill. Jan. 28, 2020) (plaintiff "has alleged enough to make her claims plausible, particularly because they involve acts by teachers"). Professor Yi had the power to determine how class time was spent, what behavior was acceptable in class, who worked with whom, what assignments Shiran must complete, and whether and with what grade Shiran would receive credit for the course. (Compl. ¶¶ 59, 60, 61-68, 69-85). This factor tips in Shiran's favor.

**B.     Professor Yi cannot claim any legitimate basis for her conduct.**

As to the second factor, with each escalating abuse of her power, Yi's ability to claim a reasonable belief of legitimate objective progressively disappeared. By the time Yi announced the new final assignment, targeting Shiran with disturbing imagery designed to trigger and upset only her, it becomes simply impossible to claim any reasonable belief in any legitimate objective. (Compl. ¶¶ 71–80.) In fact, the end game retrospectively exposes the illegitimate objective driving Yi's behavior from the very beginning. Yi cannot reasonably claim her specific targeting of Shiran, and the manner in which she did so, as legitimate.

**C.     Professor Yi's conduct was exacerbated by her knowledge that Shiran was particularly susceptibility to distress.**

Yi's conduct is all the more outrageous because she was fully aware of the extent of Shiran's emotional vulnerability, and she knew how highly susceptible Shiran was to emotional distress. On more than one occasion, Shiran shared with the class and with Yi privately the extent

of her grief and the emotional toll October 7th has had on her (Compl. ¶ 54), and how she feared being targeted by her peers' hateful antisemitic sentiments. (Compl. ¶¶ 55, 57.) Yi was also able to directly observe how emotionally distressing the discussions were for Shiran. (Compl. ¶¶ 59–60.) In the assignment itself, Yi underscores her full awareness of the challenge she was posing to Shiran—"Can you keep it professional and still empathize with clients even when the content of their art upsets or triggers you?" (Compl. ¶ 75.) Professor Yi's repeated rebuke of Shiran to "tolerate upsetting or triggering subject matter" whenever classroom events veered into open vitriol towards Israelis precisely demonstrates her knowledge that Shiran *would be* distressed by Professor Yi's abusive conduct. (Compl. ¶ 60); *see Fox v. Hayes*, 600 F.3d 819, 842–43 (7th Cir. 2010) (defendant's "abuse of his authority, involving an obviously vulnerable [plaintiff] boosts what otherwise might be characterized as a particularly ugly insult across the threshold into a valid IIED claim . . . a jury could easily find that . . . he exploited his position of power to intentionally cause [plaintiff] distress.")

Professor Yi's knowledge of Shiran's particular susceptibility to distress exacerbates her conduct and contributes to its extreme and outrageous nature.

### D. A reasonable jury could conclude Professor Yi's conduct was extreme and outrageous.

Professor Yi's position of power as a teacher, her lack of a legitimate basis for her conduct, and her knowledge that Shiran was uniquely vulnerable, intensifies her despicable behavior – conduct which, surely, a reasonably jury could evaluate, on a complete record of the facts, and regard as outrageous. *Pinkston v. Bd. of Educ. of City of Chicago*, No. 19 CV 6477, 2023 WL 6392302, at *8 (N.D. Ill. Oct. 2, 2023) ("at this stage of the proceedings where Plaintiff need only provide enough details to 'present a story that holds together,' the Court finds that Plaintiff has pled enough facts to show that [defendant] intentionally abused her position of authority in

5

disciplining [student] (by locking him outside without a jacket) and that her choice of discipline rose to the level of 'extreme and outrageous' conduct.")

More specifically, a reasonable jury could find that, taken together, it is intolerable, "*in a civilized community,*" for a professor to: lure a grieving and already isolated student into a voluntary class session she expressed concerns of attending by assuring her it was not to be a discussion about (let alone a bashing of) Israel – then sitting back and "savoring" as it unfolded precisely that way (Compl. ¶¶ 53-59); facilitate a hostile classmate's demand to split from their joint project with the student, then, on the very same project, give the student failing marks based upon the "peer review" of other openly hostile classmates who bullied the student, falsely slandered her for "plagiarizing" from her initial project partner, and admitted their evaluation was not based on the merits of the presentation (Compl. ¶¶ 61-67); encourage classroom discussion (divorced from the actual curriculum) focused on directing vitriol precisely at the student, and no one else in class (Compl. ¶ 60); abruptly change an exam assignment (for which students had already submitted drafts) to intentionally focus, overwhelmingly, on propaganda images smearing Israelis and dehumanizing them as "colonizers" specifically in order to cause the student distress (Compl. ¶¶ 69-84); and change the overall course grading rubric to place more weight on "peer review" so as to specifically target the student who was already hated by the "peer reviewers," who the professor knew "vocally and categorically despised Israelis." (Compl. ¶ 85.) Shiran states a claim for IIED.

### E. None of the case law Yi cites supports her argument that Shiran's detailed allegations describing Yi's extreme and outrageous conduct are inadequate.

Yi cites to a number of inapposite cases to suggest Plaintiff's allegations cannot, as a matter of law, support a jury finding of extreme and outrageous conduct upon a full record of the facts. Yi first cites to *Totten v. Benedictine Univ.*, where the court dismissed a student's IIED claim

6

against her university for engaging in "instances of rude, cooperative, and unfair conduct" and "inconvienc[ing]" and "ignor[ing]" her in its "response to [her] reports of harassment and sexual harassment." No. 20 C 6107, 2021 WL 3290926, at *12 (N.D. Ill. Aug. 2, 2021).[1] But here, Shiran is not alleging Professor Yi merely engaged in "rude" or "unfair" behavior in responding to reports of harassment by others; she alleges Professor Yi was herself a chief abuser and engaged in conduct intended and designed to cause Shiran emotional distress.

Yi also cites to *Watanabe v. Loyola Univ. of Chicago* to suggest Plaintiff fails to allege extreme and outrageous conduct. In *Watanabe*, the plaintiff alleged she was "falsely accused of threatening a Loyola employee and was forced to seek counseling she did not need." No. 99 C 4820, 2000 WL 876983, at *6 (N.D. Ill. July 3, 2000). Unlike Shiran, the plaintiff then advanced a domino-effect argument that "because of this situation, she was unable to complete a class she needed to graduate and was forced to graduate in September rather than January;" and that her resulting inability "to complete her final class, graduate, and find a job" rendered her "unable to support her son and pay his tuition." *Id.* She also alleged Loyola provided a negative employment reference. *Id.* The court held that this was not enough to state an IIED claim, especially because she did not allege that the information provided in the employment reference was false. *Id.* These allegations bear no substantive resemblance to what Shiran claims.

*Bannon v. Univ. of Chicago* is also distinguishable. 503 F.3d 623 (7th Cir. 2007). There, the Seventh Circuit held the plaintiff (who was employed at Argonne National Laboratory, operated by the University) complained of "the kind of ordinary workplace stress that is not

---

[1] The *Totten* court also dismissed the student's IIED claim because, although she stated the university "knew or should have known that she was particularly susceptible to emotional distress," she "fail[ed] to plead any facts to support that conclusion." *Id*. at *12. The Complaint here, on the other hand, does plead facts supporting that conclusion. (Compl. ¶¶ 54-55, 57) (Yi's awareness of Shiran's susceptibility to emotional distress).

7

actionable." *Id.* at 630.[2] Specifically, the plaintiff alleged she was "excluded from some meetings," was "denied the responsibility of organizing meetings," had to attend "unpleasant sessions with Argonne's general counsel that led to no disciplinary action," and had a "mean boss" who called her "stupid." *Id*. Here, however, Shiran does not complain of "ordinary workplace stress," or even "ordinary" unpleasantness on campus. Rather, she alleges Professor Yi engaged in targeted and deliberate actions to harm, isolate, and retaliate against Shiran, her student, in a manner that a reasonable jury could conclude was extreme and outrageous.

Finally, Yi's cited case of *Harriston v. Chicago Tribune Co.*, also does not shut the door on the extreme and outrageous nature of her conduct. This Court in *Kibbons v. Taft Sch. Dist. 90*, 563 F. Supp. 3d 798, 814 (N.D. Ill. 2021) considered the import of *Harriston* when holding the plaintiff in *Kibbons* stated a claim for IIED. The Court noted that in *Harriston,* the plaintiff's IIED claim "was based on allegations that her employer had taken arbitrary negative actions against her and failed to respond to her safety concerns." *Id.* at 814. In noting that *Harriston* held the behavior "did not go beyond all possible bounds of decency," the Court remarked that *Harriston* "did not analyze the aggravating factor of retaliation." In upholding the IIED claim presented in *Kibbons*, the court noted that the factor of retaliation "tips the scales in favor of Kibbons' claim, at least at the pleading stage." *Id.*

This case is more like *Kibbons* than *Harriston. Kibbons* involved a superintendent's allegations that a school board member unlawfully harassed her, retaliated against her, and engaged in a "personalized and vindictive campaign against her." *Id.* In declining to dismiss the

---

[2] It is generally more difficult to allege IIED in employment situations because "personality conflicts, job performance evaluations, or job transfers are unavoidable and often result in stress, [and] if such stress formed the basis for the tort of intentional infliction of emotional distress, virtually every employee would have a cause of action." *Miller v. Equitable Life Assur. Soc. of the U.S.*, 181 Ill. App. 3d 954, 957, 537 N.E.2d 887, 889 (1989). Here, Shiran is not an employee, and the conduct Professor Yi forced her to endure is decidedly not typical of a classroom environment.

IIED claim, the Court noted the defendant's position of power over the plaintiff. It also emphasized the retaliatory nature of the conduct: "Illinois courts have found that abusive conduct that would not constitute extreme and outrageous behavior on its own may rise to that level where it is retaliatory—as *Kibbons* has alleged here." *Id.* Like Kibbons, Shiran alleges Professor Yi not only unlawfully discriminated against her, but also engaged in a "personalized and vindictive campaign against her," and retaliated against Shiran for reporting her earlier harassment to the school's Title IX office for investigation. (Compl. ¶¶ 71-72, 82.)

### II. Shiran adequately alleges she suffered severe emotional distress.

The extreme and outrageous nature of Professor Yi's conduct, coupled with Shiran's allegations that the conduct caused her severe emotional distress (Compl. ¶ 164); that Professor Yi's conduct was done knowing Plaintiff was already "in a state of grief, shock, and mourning" since October 7th (Compl. ¶ 36); and that Professor Yi's new final examination "formally inject[ed] the traumatizing and emotionally charged" subject matter directly into the course's final assignment which was designed to "uniquely target[] Shiran," (Compl. ¶ 73) together provide a more than adequate factual basis for Shiran's suffering of severe emotional distress.

Indeed, the Seventh Circuit has observed that even in satisfying the ultimate evidentiary burden required for judgment in favor of a plaintiff's IIED claim, "in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed." *Fox*, 600 F.3d at 842–43. Illinois courts have tended to merge the conduct and distress elements of IIED such that the more severe the conduct, the less proof of severe distress required. *See Honaker v. Smith*, 256 F.3d 477, 496 (7th Cir. 2001). To be sure, on a motion to dismiss there is no requirement that Shiran prove her allegations. At this stage, all that is required is that Shiran's allegations be plausible on their face.

Not surprisingly, Yi does not cite a single case where the court found the plaintiff adequately alleged outrageous behavior but dismissed for failing to plausibly allege severe emotional distress. *See A.J. by Julka v. Butler Illinois Sch. Dist. #53*, No. 17 C 2849, 2020 WL 3960444, at *4 (N.D. Ill. July 13, 2020), *aff'd sub nom. Julka v. Bd. of Educ. of Butler Sch. Dist. #53*, No. 20-2531, 2021 WL 5563721 (7th Cir. Nov. 29, 2021) ("[D]efendants analogize to several cases in which Illinois courts have ruled that a plaintiff's emotional distress was not sufficiently severe to be actionable. . . . Those cases are distinguishable, however, because in each, the court also concluded that the defendant's conduct was not extreme and outrageous.") In each case Yi cites, the plaintiff also failed to allege outrageous conduct. *See Mnyofu v. Bd. Of Educ. Of Rich Twp. High Sch. Dist.* 227, 832 F.Supp.2d 940, 950 (dismissed for failing to adequately allege any of the necessary elements, including outrageous conduct); *Nardella v. Leyden High Sch. Dist.* 212, No. 15 C 4885, 2017 WL 1806589, at *5 (N.D. Ill. May 5, 2017) (same); *Doe v. Columbia College Chicago*, 299 F. Supp. 3d 939, 964 (N.D. Ill. 2017) ("Here, Doe has simply not alleged conduct that was extreme or outrageous enough to support an IIED claim.")

### III. The Complaint also contains sufficient allegations of Yi's intent

Illinois courts have "generally found [the] element [of intent] to be satisfied either when a defendant's actions, by their very nature, were likely to cause severe distress or when the defendant knew that a plaintiff was particularly susceptible to such distress and that, because of this susceptibility, the defendant's actions were likely to cause it to occur." *A.J. by Julka*, 2020 WL 3960444, at *4.

As discussed in Section I, *supra*, given the totality of the circumstances, Professor Yi's actions, by their very nature, were likely to cause severe distress and, moreover, she was well aware that Shiran was particularly susceptible to such distress. For example, Plaintiff alleges

10

Professor Yi deliberately lied to Shiran in order to lure her to a voluntary class session, which she promised would not relate to Israel, with assurances she would mediate the discussion, after Shiran was reluctant to attend. But the session devolved precisely as Shiran feared, with Professor Yi sitting silently, "savor[ing] [Shiran] having to countenance the hostility." (Compl. ¶¶ 55-59.)

Shiran also alleges Professor Yi repeatedly "demand[ed] that Shiran…tolerate upsetting or triggering subject matter," while she dedicated class time to students expressing vitriol towards Israelis, and "demonstrated sympathy towards her classmates' hostile and antisemitic musings." (Compl. ¶ 60.) Shiran also alleges Professor Yi punished Shiran via grading, and elevated peer feedback which Professor Yi *knew* was delivered by classmates who "vocally and categorically despised Israelis," and which she *knew* was not based on the merits of Shiran's work. (Compl. ¶¶ 67, 68, 81.)

The new, surprise final assignment is the most significant example of conduct likely to cause severe distress and Professor Yi's specific intent to cause Shiran severe distress. Immediately after Shiran reported Professor Yi's harassing conduct, Yi changed the final assignment for which students had already submitted drafts, converting it into a platform for further targeting Shiran. (Compl. ¶¶ 69–81.) Shiran has adequately alleged Professor Yi intended her conduct would inflict severe emotional distress, and that she knew that there was a high probability that it would, given Shiran's susceptibility.

**IV.** **Shiran's IIED claim stands independently of any legal duty created by the IHRA, and is not preempted by it.**

Yi argues that the IHRA preempts Shiran's IIED claim, because "the entire basis for Plaintiff's IIED claim is alleged conduct protected by the IHRA." (Mot. 10.) "Absent these allegations," says Yi, "Plaintiff is unable to establish facts to support her IIED claim." (*Id.*)

Yi's argument is based on a misunderstanding of IHRA preemption. As the Supreme Court of Illinois explained, the rule "is not that the Act precludes the [] court from exercising jurisdiction over all tort claims related to [a civil rights violation]." *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 517 (1997). "Rather, [preemption] depends upon whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself." *Id.* Put differently, "a common law tort claim is not inextricably linked with a civil rights violation where a plaintiff can establish the necessary elements of the tort independent of any legal duties created by the Illinois Human Rights Act." *Id.* at 519. "In such a case, the plaintiff has established a basis for imposing liability on the defendant independent of any statutory cause of action under the Act, and therefore the circuit court does have jurisdiction to adjudicate the plaintiff's common law tort claim." *Id.*

Shiran alleges Yi engaged in extreme and outrageous conduct separate and apart from any obligation to refrain from discrimination. She alleges Yi intentionally modified the course's final examination to specifically target Shiran, using imagery and statements designed to inflict pain specifically on her; she alleges Yi intentionally changed the grading rubric of the course to specifically harm Shiran's grades by elevating the weight given to the "peer review" of knowingly hostile classmates; she alleges Yi subjected her to voluntary and required class sessions dedicated to discussions that were designed to and did cause Shiran emotional harm. This conduct is extreme and outrageous regardless of whether it was rooted in discriminatory animus.

Yi "incorrectly focuses on the factual allegations underlying the claims, rather than the legal duties on which the claims are premised." *See Summerland v. Exelon Generation Co.*, 510 F. Supp. 3d at 630. "[T]he proper inquiry [is] not whether the facts that support [an IIED] claim could also have supported a discrimination claim, but instead whether [the plaintiff] can prove the

elements of [IIED] independent of legal duties furnished by the IHRA." *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006).

This Court has clarified this distinction and rejected arguments like Yi's on several occasions. For example, in *Spring-Weber v. City of Chicago*, this Court found that the IHRA did not preempt plaintiff's IIED claim, explaining:

> The conduct that Spring alleges can qualify as extreme and outrageous, independent of whether it also violates the IHRA. Spring alleges that she was placed on involuntary leave, confined to her home, forced to undergo drug and psychiatric testing, denied compensation for medical treatment, transferred to a remote location, denied transfers or promotions to other positions, and denied the ability to schedule her furlough days. Even assuming that none of this conduct was motivated by Spring's disability—and therefore cannot serve as the basis for a civil rights violation—this conduct could give rise to a claim for IIED.

No. 16 C 8097, 2017 WL 1316267, at *9 (N.D. Ill. Apr. 10, 2017).

Again, in *Summerland*, this Court clarified the rule for another defendant making the same error:

> Pohlman and Triangle contend that Summerland's IIED claims are preempted because they are 'based upon the same allegations pled in support of [her] ADA claims.' That argument incorrectly focuses on the factual allegations underlying the claims, rather than the legal duties on which the claims are premised. Under the correct standard, the question is whether Summerland alleges 'behavior that would be a tort no matter what [Pohlman's and Triangle's] motives,'—that is, whether taking the alleged tortious actions 'for any reason [would] support a claim for [IIED].' Here, whatever their subjective motives, Defendants' insults, deception concerning the last chance agreement, and interference with Summerland's therapy appointments could be deemed objectively outrageous, at least on the pleadings. The IIED claims therefore are not preempted by the IHRA.

*Summerland*, 510 F. Supp. 3d at 630 (internal citations omitted).

Here, too, Shiran's allegations supporting her IIED claim are wholly independent of any legal duties created by the IHRA. Regardless of whether Yi was motivated by racial animus toward Shiran or Yi just didn't like her and wanted to retaliate against Shiran for reporting Yi's

harassment, Yi's conduct remains objectively outrageous. The fact that Shiran also alleges that Yi was motivated by discriminatory intent does not change that conclusion.

## CONCLUSION

For the foregoing reasons, Defendant Yi's Motion to Dismiss should be denied.

Respectfully submitted,

**SHIRAN CANEL**

By: */s/ Steven P. Blonder*
One of her attorneys

Steven P. Blonder (6215773)
Joanne A. Sarasin (6191817)
Laura A. Elkayam (6303237)
**MUCH SHELIST, P.C.**
191 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312) 521-2402
sblonder@muchlaw.com
jsarasin@muchlaw.com
lelkayam@muchlaw.com

Avraham E. Aizenman
**STEELMAN ADVOCATE, P.C.**
3840 Via De La Valle
Del Mar, CA 92014
(424) 242-4603
eli@steelmanadvocate.com
(admitted pro hac vice)