**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHIRAN CANEL, | | |
| Plaintiff, | | No. 1:23-CV-17064 |
| v. | | |
| SCHOOL OF THE ART INSTITUTE OF CHICAGO and SANDIE YI, | | Honorable Nancy Maldonado Magistrate Judge Gabriel Fuentes |
| Defendants. | | |

**DEFENDANT THE SCHOOL OF THE ART INSTITUTE OF CHICAGO'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

In her Response in Opposition to School of the Art Institute of Chicago's Motion to Dismiss (Dkt. 51) ("Plaintiff's Response"), Plaintiff Shiran Canel ("Plaintiff") expresses how, in Plaintiff's view, Defendant the School of the Art Institute of Chicago ("SAIC" or the "School") should have conducted itself in the aftermath of the October 7 attacks. She fails to show, however, that SAIC's conduct in this area, as set forth in the allegations in the Complaint, fell short of SAIC's legal obligations. On the contrary, the allegations in the Complaint demonstrate that Plaintiff failed to plead discrimination pursuant to Title VI under either her original "hostile environment" theory or her new "direct discrimination" theory. As SAIC demonstrated in its memorandum of law in support of its motion to dismiss (Dkt. 42) ("SAIC's Memorandum"), Plaintiff likewise failed to adequately plead claims of breach of contract, consumer fraud, or intentional infliction of emotional distress. Nothing in Plaintiff's Response alters these conclusions. Accordingly, the Court should dismiss the Complaint in its entirety.

I. **Plaintiff Failed to Plead a Claim of Discrimination under Title VI or the Illinois Human Rights Act (Counts I and II).**

In its memorandum, SAIC demonstrated that the allegations in the Complaint do not state a claim of discrimination under either Title VI or the IHRA. Dkt. 42 at 7-13. Specifically, Plaintiff fails to adequately allege that she was subject to sufficiently "severe, pervasive, and objectively offensive" conduct or that SAIC was "deliberately indifferent," as required to plead the presence of a hostile environment. Plaintiff likewise fails to adequately allege that she was subject to "direct discrimination." Accordingly, the Court should dismiss Plaintiff's claims of discrimination.

A. **Plaintiff's Allegations Show that SAIC Was Not Deliberately Indifferent.**

The allegations in the Complaint demonstrate that SAIC was not deliberately indifferent to Plaintiff's complaints of discrimination and harassment, but rather addressed them in accordance

1

with its legal obligations. Indeed, Plaintiff alleges that SAIC engaged in the following conduct related to Plaintiff's concerns:

- Investigated Plaintiff's complaints about SAIC's admissions process (Dkt. 1 at ¶ 35);

- Reversed its initial decision and admitted Plaintiff to the School (*id.* at ¶ 36);

- Adjusted regular in-class programming on November 17, 2023 to create a "communal space" while still "focus[ing] on art therapy assessment and art materials" (*id.* at ¶¶ 53, 56);

- Engaged outside counsel to review Plaintiff's complaints of discrimination and harassment (*id.* at ¶ 69); and

- Directed Defendant Yi to change the final assignment for the Materials and Media in Art Therapy course (*id.* at ¶ 82).

These are not the actions of a postsecondary institution that is "deliberately indifferent" to the concerns of Plaintiff or any student. *See, e.g., E.C. v. Comm. School Corp. of East Hancock Cty.*, No. 119CV03563JPHCSW, 2023 WL 5872522, at *6 (S.D. Ind. Sept. 11, 2023) (finding that a Title IX plaintiff must show that "the school's 'response to that [actual knowledge of discrimination in the school's programs] must amount to deliberate indifference to discrimination reflecting an official decision by the [school] *not to remedy the violation*") (emphasis added).

Contrary to Plaintiff's assertions, *see* Dkt. 51 at 8-10, SAIC did not use its investigations to bypass its legal obligations but rather to comply with them. Courts within this circuit have found that similar and even less fulsome institutional responses provide a basis for dismissing claims of deliberate indifference. For example, in *Doe v. University of Notre Dame Du Lac*, the district court cited with approval a case in which "there were reports of two sexual assaults on fellow students by a Notre Dame football player, and Notre Dame took appropriate action to investigate the matter." No. 3:17-CV-690-PPS, 2018 WL 2184392, at *3 (N.D. Ind. May 11, 2018). The district court found that Notre Dame's response was "a plainly reasonable response to a possible danger on campus" and dismissed the claim. *See id.*

2

Since Plaintiff cannot show that SAIC's action or inaction amounts to deliberate indifference, it appears that Plaintiff simply does not approve of the specific actions SAIC chose. *See, e.g.,* Dkt. 51 at 6 ("Indeed one would assume the school would be eager to let her know that it was, in fact, investigating and remediating, if that was truly the case"). Plaintiff offers many criticisms of SAIC's response, but her preference for different or quicker actions does not support an argument that SAIC was deliberately indifferent. For example, it appears that Plaintiff would have preferred that SAIC act more quickly, perhaps without the benefit of full and thorough investigations. *See id.* at 5. But SAIC could not act on just Plaintiff's word or the word of any other individual student; SAIC had an obligation to investigate. *Cf. E.D. v. Noblesville Sch. Dist.*, No. 121CV03075SEBMPB, 2022 WL 4599119, at *14 (S.D. Ind. Sept. 30, 2022), *on reconsideration in part*, No. 121CV03075SEBTAB, 2023 WL 6316913 (S.D. Ind. Sept. 28, 2023). Similarly, Plaintiff alleges that SAIC acted only when she applied pressure. *See* Dkt. 51 at 8 (asserting that SAIC responded "upon the threat of legal action"). Even if that were true—which SAIC denies— the fact that Plaintiff allegedly pressured SAIC to act does not negate the bare fact that SAIC did, in fact, act. And the fact that Plaintiff asserts that she did not receive the response she wanted to her complaints does not mean that SAIC's response was clearly unreasonable. *See, e.g., Galster*, 768 F.3d at 621 (a student is not "entitle[d] . . . to any specific remedial measures"). Therefore, based on the allegations in the Complaint, SAIC was not "deliberately indifferent."[1]

---

[1] Plaintiff cites *L.W. v. Roman Catholic Archdiocese of Indianapolis, Inc.*, No. 121CV02397JMSMJD, 2022 WL 2209914 (S.D. Ind. June 21, 2022), for the proposition that SAIC's institutional responses are distinguishable from the responses undertaken in *Jaquet v. Green Bay Area Catholic Educ., Inc.*, 996 F.3d 802 (7th Cir. 2021) and *Doe v. Galster*, 768 F.2d 611 (7th Cir. 2014). *See* Dkt. 51 at 7. But *L.W.* is distinguishable from this case in all material aspects, including the following: the plaintiff was a high school student with a disability, not an adult graduate student; the defendant was a high school, not a postsecondary school; and the plaintiff was allegedly subjected to sexual abuse at school, an allegation not present here.

3

## B.  Plaintiff's Allegations Do Not State a Claim of Direct Discrimination by SAIC.

In an attempt to salvage her discrimination claims, Plaintiff, for the first time in her Response, asserts that she is bringing a claim for "direct discrimination" under Title VI. To state such a claim under Title VI, "plaintiffs must allege facts satisfying two elements: (1) that they have been intentionally discriminated against on the grounds of race; and (2) that defendants are recipients of federal financial assistance." *Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 720 (N.D. Ill. 2015). Where a plaintiff merely mentions her own country of origin and recites "legal conclusions," her allegations do not give fair notice to the school that she is asserting that her national origin motivated the school's actions." *See Beaulieu v. Ashford., LLC*, No. 22-1654, 2022 WL 17076691, at *2 (7th Cir. Nov. 18, 2022). This missing notice is "fatal." *Id*. Furthermore, a Title VI claim may fail when the plaintiff fails to "allege any facts supporting a discriminatory intent." *Smith v. Utah Valley Univ.*, 97 F. Supp. 3d 998, 1006 (S.D. Ind. 2015), *aff'd*, 619 F. App'x 559 (7th Cir. 2015) ("Threadbare accusations do not satisfy the standard articulated in *Twombly* and *Iqbal*.").

Here, the Complaint includes only conclusory assertions regarding intent, not factual allegations allowing a reasonable inference. In attempting to show that she adequately pled direct discrimination, Plaintiff cites five paragraphs of the Complaint.  Dkt. 51 at 3 (citing Compl., ¶¶ 102, 107-110). The allegations in these paragraphs, however, are conclusory and merely restate the elements of the purported claim, adding no factual detail whatsoever. *See* Compl., ¶¶ 102, 107-110. For example, Paragraph 102 states: "As described in this complaint, the acts and omissions of SAIC, its administrators, and its faculty have subjected Shiran to discrimination on the basis of

---

Accordingly, *L.W.* is hardly instructive in evaluating SAIC's response to Plaintiff's particular concerns.

her actual or perceived Jewish and Israeli shared ancestry, race, ethnic characteristics, or national origin." Compl., ¶102.

Importantly, neither of these paragraphs nor any other paragraphs in the Complaint set forth non-conclusory, factual allegations sufficient to plead the discriminatory intent required to state a claim. *See generally* Compl. Here, too, the paragraphs specifically cited in Plaintiff's Memorandum include only conclusory allegations, such as the following: "SAIC, its administrators, and its faculty have actively and intentionally engaged in this pattern of severe or pervasive discrimination." Compl., ¶ 107. Therefore, Plaintiff has failed to plead direct discrimination.

### C. Nothing in Plaintiff's Response Alters the Conclusion that Plaintiff Fails to Plead a Claim of Breach of Contract (Count III).

Plaintiff fails to point to any purported breaches of contract that do not amount to unenforceable puffery or tacit claims of educational malpractice that are not cognizable at law.

#### 1. Purported Breaches of Contract Based on Puffery

Although the parties agree that Plaintiff can make no breach-of-contract claim with respect to SAIC's obligations already existing in law,[2] Plaintiff asserts that SAIC breached other supposed contractual obligations to Plaintiff. Specifically, Plaintiff points to allegations such as statements on SAIC's website "regarding how inclusive, welcoming, and tolerant the school is." Compl., ¶ 132. Plaintiff's argument is deficient for two reasons.

First, the supposed promises allegedly violated are not enforceable contractual terms. Many of the supposed enforceable contractual promises constitute mere descriptions or aspirations. For example, Plaintiff alleges that SAIC "promised a nurturing and inclusive environment." Compl.,

---

[2] This agreement means that the policy language set forth in Paragraph 131 of the Complaint cannot form the basis of a breach-of-contract claim.

¶ 133. These sorts of descriptions of a school's environment are not enforceable contractual promises. For instance, in *Miller v. Lewis University*, the court held that promotional materials cannot become part of the contract between the student and the university and noted that statements such as a "safe and welcoming campus" and "an inviting community" were not concrete promises that could comprise part of a contract between student and university. 533 F. Supp. 3d 678, 684 (N.D. Ill. 2021); *see also Polley v. Northwestern Univ.*, 560 F. Supp. 3d 1197, 1207 (N.D. Ill. 2021) (granting motion to dismiss breach-of-contract claim where students pointed to purported "promises" such as "an environment with limitless possibilities to learn, make a difference, and define your path for future success"). In *Polley v. Northwestern University*, for example, the district court stated, "Northwestern cannot be required to present a literal environment of 'limitless possibility' as the university is anchored, as we all are, by temporal reality." *Id.* Indeed, "expression[s] of intention, hope or desire" are not the sorts of specific promises that are enforceable as contract terms. *Oyoque v. DePaul Univ.*, 520 F. Supp. 3d 1058, 1064 (N.D. Ill. 2021) (dismissing breach-of-contract claim where student handbook contained language regarding "foster[ing] student learning and success," among other expressions).

Second, even if any of these supposed promises were enforceable contractual terms, the Complaint fails to adequately allege that SAIC failed to fulfill these promises. For example, Plaintiff points to a strategic initiative by SAIC to "enhance belonging" and "continue to cultivate diversity and inclusion." Compl., ¶ 132. Plaintiff does not allege that SAIC is not pursuing this strategic initiative. Similarly, Plaintiff points to language in SAIC's Program Guide indicating "that her peers would be held to the school's rules of conduct outlined in the SAIC Student Handbook." Dkt. 51 at 12-13. This statement in the Program Guide pertains specifically to issues of student academic integrity, which are not among the allegations Plaintiff pleads with respect to

her peers. *See* https://www.saic.edu/sites/default/files/2023-08/23_24_MAATC_Program_ Guide_0.pdf (accessed April 9, 2024) (cited in Compl., ¶ 133). Furthermore, Plaintiff does not allege in the Complaint that SAIC has not followed or is not following the applicable procedures set forth in the Student Handbook for enforcing SAIC's rules of conduct. *See generally* Compl.

### 2. Claims of Non-Cognizable Educational Malpractice

The assertions in Plaintiff's Response only bolster SAIC's demonstration that Plaintiff's purported breach-of-contract claims, even if proven, would amount to non-cognizable educational malpractice. SAIC correctly pointed out that Plaintiff's critiques of her coursework, as set forth in her Complaint, constitute claims of educational malpractice that must be dismissed. Dkt. 42 at 12-13. "Given the many policy concerns that counsel against allowing educational malpractice claims, *see Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir. 1992), courts will not second-guess the professional judgment of a university in academic matters, regardless of how a claim is packaged." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873 (7th Cir. 2022). In response, Plaintiff asserts that SAIC used "class time and assignments" to "harass and discriminate against" Plaintiff. Dkt. 51 at 13 (citing no specific language in the Complaint). Plaintiff denies that she is "[a]sking the court to evaluate pedagogical judgments," but that is precisely what she does. Plaintiff disagrees with Professor Yi and Professor DelSignore's approach to the November 17, 2023 double-class, implying that it was not sufficiently topical or educational. Similarly, Plaintiff questions Professor Yi's final assignment as modified. These are precisely the sorts of assertions that can amount only to educational malpractice, not breaches of contract, and thus cannot survive a motion to dismiss.

### D. Plaintiff's Memorandum Fails to Rehabilitate her Claim under the Illinois Consumer Fraud Act (Count IV).

The Court should dismiss Count IV of the Complaint because it is not adequately pled in the Complaint, and nothing in Plaintiff's Memorandum displaces that conclusion. In its motion

and memorandum, SAIC demonstrates that the Complaint does not show any policy or statement that SAIC did not enforce. *See* Dkt. 42 at 13. As shown in that memorandum and in Section C, above, nothing in Plaintiff's Response shows otherwise.

Plaintiff also failed to plead actual damages—let alone damages proximately caused by SAIC's supposed deception—as required to adequately plead a claim under the ICFA. *See* Dkt. 42 at 14. In response, Plaintiff refers to allegations describing "how Plaintiff paid tuition and fees she would not have incurred had she known the truth about the campus environment." Dkt. 51 at 14 (citing Compl., ¶ 155). *See Oyoque*, 520 F. Supp. at 1064. But Plaintiff does not allege that she did not receive the benefit of her tuition and fees; she does not allege that she did not take the courses for which she paid or did not receive credit for them. *See generally* Compl. Plaintiff, therefore, is whole with respect to her tuition and fees and fails to plead actual damages sufficient to state a claim under the Illinois Consumer Fraud Act.

### E. Plaintiff Cannot Prevail on Her Claim of Intentional Infliction of Emotional Distress (Count V).

Plaintiff's Response fails to show that she pled conduct by SAIC so severe it "exceeds all bounds of human decency . . . to the extent that no reasonable person could be expected to endure," as required to state a claim of intentional infliction of emotional distress ("IIED") or that her purported IIED claim, as pled, is not preempted by the Illinois Human Rights Act ("IHRA"). *Schumacher v. J.P. Morgan & Co., Inc.*, No. 98 C 108, 1999 WL 58554, at *5 (N.D. Ill. Feb. 3, 1999). Plaintiff alleges "not a single act or omission by SAIC that is sufficiently outrageous as to support a claim of IIED." Dkt. 42 at 14. Plaintiff, however, summarily claims that "SAIC and Professor Yi's treatment of Shiran in the immediate aftermath of a gruesome terrorist attack on her family, friends, and community, is sufficient to support a claim for the common law tort of [IIED] . . . ." Dkt. 51 at 14. Plaintiff also refers to her response to Defendant Yi's motion to dismiss, but

that response discusses only conduct specific to Defendant Yi, including conduct as to which, according to the Complaint, SAIC intervened. *See* Dkt. 52 at 4-6; Compl., ¶ 82. Given the opportunity to identify allegations showing SAIC's extreme and outrageous conduct, Plaintiff identified none. The Court should dismiss her claim of IIED on that basis alone.

Furthermore, Plaintiff fails to show that her IIED claim is not preempted by the IHRA. Plaintiff's IIED claim is based on the same factual predicate as her IHRA claim of discrimination and harassment. *See* Dkt. 42 at 14-15. Nonetheless, Plaintiff denies that her IIED claim is preempted, arguing that her IIED claim is not preempted because it "is premised on conduct that is extreme and outrageous, not merely discriminatory." Dkt. 51 at 15. But "[t]he distinction between claims that are preempted and claims that are not preempted turns on the legal duty that the defendant allegedly breached:" The "proper inquiry" is whether Plaintiff "can prove the elements of [IIED] independent of legal duties furnished by the IHRA." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006). Here, Plaintiff cannot do so. Even if Plaintiff could identify "extreme and outrageous" alleged conduct by SAIC for purposes of her IIED claim—which she has not and cannot—the same alleged conduct would make up her claims of discrimination and harassment under the IHRA.

## CONCLUSION

For these reasons and the reasons stated in SAIC's motion to dismiss and supporting memorandum of law, the Complaint fails to state a claim on which relief can be granted and should be dismissed.

Respectfully submitted,

SCHOOL OF THE ART INSTITUTE OF
CHICAGO

By: /s/ John W. Borkowski
      One of Its Attorneys

John W. Borkowski
Karen Courtheoux
Katherine Tierney
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
P: (312) 526-1634
john.borkowski@huschblackwell.com
karen.courtheoux@huschblackwell.com
katherine.tierney@huschblackwell.com

10

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 15, 2024, he electronically filed the foregoing **DEFENDANT THE SCHOOL OF THE ART INSTITUTE OF CHICAGO'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of the Court using the CMECF system which will send notification to the following individuals listed below:

Steven P. Blonder
Laura Elakayam
Much Shelist P.C.
191 North Wacker Drive
Suite 1800
Chicago, IL 60606
sblonder@muchlaw.com
lelkayam@muchlaw.com

Avraham E. Aizenman
Steelman Advocate PC
3840 Via De La Valle
Del Mar, CA 92014
eli@steelmanadvocate.com

Jonathan B. Blakley
Susan J. Best
Maximilian J. Bungert
Gordon Rees Scully Mansukhani, LLP
1 N Franklin, Suite 800
Chicago, IL 60606
jblakley@grsm.com
sbest@grsm.com
mbungert@grsm.com

/s/ *John W. Borkowski*

11