IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Shiran Canel,<br><br>      Plaintiff,<br><br>v.<br><br>Art Institute of Chicago, Sandie Yi<br><br>      Defendants. | Case No. 23 CV 17064<br><br>Honorable Nancy L. Maldonado |

**ORDER**

    Plaintiff Shiran Canel initiated this action against Defendants Art Institute of Chicago and Sandie Yi bringing claims for: (1) discrimination based on religion, national origin, and ancestry claims under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* and the Illinois Human Rights Act ("IHRA"), 755 ILCS 5/1-101, *et seq.*; (2) breach of contract; (3) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*; and (4) intentional infliction of emotional distress ("IIED") under Illinois common law. (Dkt. 1.) In response, Yi filed the present motion to dismiss Canel's IIED claim against her. (Dkt. 43.) The Court previously granted Yi's motion to dismiss on the record and indicated that a written order would follow. (Dkt. 66.) This Order elaborates on the Court's reasoning for granting Yi's motion. By August 7, 2024, Canel may amend her Complaint.

**Background**

    The Court takes the factual background from the well-pled allegations in the Complaint (Dkt. 1) and assumes the allegations to be true for the purposes of the instant motion. *See, e.g.*, *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 648 (7th Cir. 2017). As the Court is ruling solely on Defendant Sandie Yi's motion to dismiss the IIED claim, the Court only includes allegations relevant to that issue.

    Plaintiff Shiran Canel is an Israeli Jewish student who is enrolled in the Art Therapy and Counseling master's program at the School of the Art Institute of Chicago ("SAIC"). (Dkt. 1 ¶ 1, 11.)[1] Defendant Yi is an assistant professor in SAIC's Art Therapy department who taught Canel's Materials and Media in Art Therapy class. (*Id.* ¶¶ 25, 61.)

    Canal raises several complaints about Yi's conduct towards her. First, on November 14, 2023, students in SAIC's Art Therapy Department circulated a letter about the ongoing conflict in Palestine (hereinafter the "November 14 Letter"). (*Id.* ¶¶ 48–50.) In response, Canel circulated her own letter (hereinafter the "Response Letter"), claiming that the November 14 Letter contained

---

[1] Page numbers are taken from CM/ECF headers.

1

antisemitic language. (*Id.* ¶ 51.) Following the dissemination of these letters, Yi and another SAIC professor announced that they would combine classes for a special class to "create a communal space for all of us to hold each other accountable through art, writing, and witness reading." (*Id.* ¶ 53.) Canel initially refused to attend the session, but she eventually agreed to participate after Yi assured Canel that the class would not be focused on politics, but rather art therapy assessment and materials. (*Id.* ¶¶ 56–57.) Canel alleges that the class nevertheless became political, and that Yi did nothing to stop the discussion from becoming heated. (*Id.* ¶ 59.) Canel alleges that Yi continued to hold discussions that disfavored her point of view and that Canel was repeatedly asked to hold space for others' feelings while her own were disregarded. (*Id.* ¶ 60.)

Next, Canel complains of an incident involving Yi's handling of Canel's group project. In Canel's Materials and Media in Art Therapy class, Canel was paired with another student to work on a joint project. (*Id.* ¶ 61.) The student informed Canel that she was not willing to work with Canel due to her political views. (*Id.* ¶ 64.) Yi permitted Canel and her project partner to split the presentation so that they could each present individually. (*Id.*) Following the presentation, Yi gave Canel a failing mark in the category of "Professionalism: Collegial + Interpersonal Skills." (*Id.* ¶ 67.) Canel also received failing marks on her "Final Peer Evaluation," allegedly based on her classmates' disagreement with her political views, and she claims that Yi "piled on" by also giving her negative feedback regarding her interactions with others. (*Id.*)

Canel also alleges that Yi retaliated against her for complaining about discrimination to SAIC's administration. On December 5, 2023, Canel informed SAIC's attorneys that she wished to initiate a formal investigation into her discrimination claims against SAIC faculty, including Yi. (*Id.* ¶ 72.) Two days later, Yi changed the final assignment for the Materials and Media in Art Therapy class. (*Id.*) This change occurred ten days before the assignment was originally due and after students had already submitted their first draft. (*Id.* ¶ 72.) The updated final assignment asked students to reflect on participating in difficult conversations and to review two groups of images. (*Id.* ¶¶ 74–76.) The assignment described the first group of images as "depictions of genital, physical, verbal, or sexual abuse, violence and trauma inicted [sic] on children and youth." (*Id.* ¶ 77.) One of the images in this group allegedly depicted an Israeli father and son speaking Hebrew. (*Id.* ¶ 78.) The second group of images was described as "depictions of gun, violence, trauma [sic], displacement and colonization from children's view." (*Id.* ¶ 78.) The images from the second group all allegedly involved pictures relating to Israel and Palestine. (*Id.* ¶ 79.) Canel complained to SAIC administration that this assignment was retaliatory harassment by Yi for initiating a formal investigation. (*Id.* ¶ 80.) SAIC cancelled the image portion of the final assignment. (*Id.* ¶ 82.)

Finally, Canel alleges, on information and belief, that Yi changed the course's grading standards to increase the weight given to peer evaluations and feedback, participation, and collegiality among classmates. (*Id.* ¶ 85.) Canel alleges that Yi did so to harm Canel's grades. (*Id.*)

On December 12, 2023, Canel initiated the present action against the Art Institute of Chicago and Yi. (*Id.*) Canel's only claim against Yi is for IIED. (*Id.* ¶¶ 159–64.) In response, Yi filed the instant motion to dismiss on the grounds that Yi has failed to state a claim for IIED and, in any case, that her IIED claim is preempted by the IHRA.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). The Court need not, however, accept conclusory allegations, or allegations that contain only legal conclusions. *See, e.g., Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 513 (7th Cir. 2020) (citations omitted). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Discussion**

The Court concludes that Canel's IIED claim against Yi is preempted by the IHRA, and dismissal of that claim is therefore warranted.

The IHRA prohibits "discrimination against any individual because of his or her race, color, religion, sex, national origin, ancestry[.]" 775 ILCS 5/1-102(A). The IHRA further states that, "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(C). Put differently, "[t]he IHRA confines claims of civil rights violations under Illinois law to proceedings under the IHRA." *Hubbard v. Dollar Tree Stores, Inc.*, No. 04 C 0012, 2005 WL 589005, *5 (N.D. Ill. Mar. 9, 2005). Accordingly, the IHRA specifically preempts tort claims that are "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the [IHRA] itself." *Maksimovic v. Tsogalis*, 687 N.Ed. 2d 21, 23 (1997). "[T]he proper inquiry [is] not whether the facts that support [an IIED] claim could also have supported a discrimination claim, but instead whether [the plaintiff] can prove the elements of [IIED] independent of legal duties furnished by the IHRA." *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006).

The tort at issue here is IIED. To bring an IIED claim, a plaintiff must allege: "(1) conduct that is truly extreme and outrageous; (2) that the defendant intended that her conduct inflict severe emotional distress, or knew that there was at least a high probability that it would; and (3) that the conduct in fact caused severe emotional distress. *Summerland v. Exelon Generation Co.*, 510 F. Supp. 3d 619, 628 (N.D. Ill. 2020) (cleaned up). Extreme and outrageous conduct is conduct that "go[es] beyond all possible bounds of decency and [is] regarded as intolerable in a civilized community." *Id.*

The Court finds that Canel's IIED claim against Yi is inextricably linked to race, religion, national origin, and ancestry discrimination as prohibited under the IHRA. The Court first points out that in her Complaint, Canel alleges that "Professor Yi's intentional conduct in discriminating

3

against Shiran was extreme and outrageous." (Dkt. 1 ¶ 160.) This allegation alone suggests that Canel's IIED claim is inextricably linked to an alleged civil rights violation. In addition, a closer review of Canel's specific allegations reveals that the "extreme and outrageous conduct" she complains of is, in fact, unlawful discrimination:

> [Yi's] extreme and outrageous conduct . . . includes intentionally subjecting [Canel] to a knowingly hostile environment; facilitating discrimination and harassment against [Canel] by her peers, intentionally targeting [Canel] by modifying course assignments for the purpose of harassing [Canel], and by allowing hateful anti-Israeli and antisemitic rhetoric to flourish all around [Canel] at every turn of her academic experience.

(*Id.* ¶ 161.) At bottom, to assess whether the IHRA preempts Canel's IIED claim, the Court must ask "whether [Canel] alleges 'behavior that would be a tort no matter what [Yi's] motives[.]'" *Summerland*, 510 F. Supp. 3d at 628 (quoting *Naeem*, 444 F.3d 604). Here, the Court finds that Canel could not prove the elements of her IIED claim based on Yi's alleged conduct without the overlay of discriminatory intent. Outside of the allegedly discriminatory context, Canel essentially alleges that Yi modified the course's final examination to disadvantage Canel, used imagery and references in class that upset Canel, changed the grading rubric to disadvantage Canel, and subjected her to uncomfortable class discussions. (Dkt. 52 at 12.) The Court therefore finds that "eliminating the civil rights component" of Canel's claim "takes the air out of the case." *Martin v. Cook County, Illinois*, No. 17 C 2330, 2018 WL 1942654, at *6 (N.D. Ill. Apr. 25, 2018) (quoting *Sanglap v. LaSalle Bank, FSB*, 345 F.3d 515, 519 (7th Cir. 2003)). In short, there is no independent basis for Canel's IIED claim without her claims of discrimination.

The Court further finds that the cases that Canel cites in her opposition are distinguishable. (Dkt. 52 at 12–13) (citing *Spring-Weber v. City of Chicago*, No. 16 C 8097, 2017 WL 1316267, at *9 (N.D. Ill. Apr. 10, 2017); *Summerland*, 510 F. Supp. 3d at 629). In *Spring-Weber*, the plaintiff alleged that "she was placed on involuntary leave, confined to her home, forced to undergo drug and psychiatric testing, denied compensation for medical treatment, transferred to a remote location, denied transfers or promotions to other positions, and denied the ability to schedule her furlough days." *Id.* The *Spring-Weber* court held that the defendant's alleged conduct was "extreme and outrageous, independent of whether it also violates the IHRA." *Id.* In *Summerland*, the court found that defendants' remark to plaintiff that she "did not work at Walmart", their fabrication of a last chance agreement, and their interference with plaintiff's therapy appointments were sufficient to support plaintiff's IIED claim such that it was not preempted by the IHRA. 510 F. Supp. 3d at 629.

Compared to the plaintiffs' allegations in the above cited cases, the Court finds that none of Yi's alleged actions, absent any discriminatory motive, were so egregious as to state an IIED claim. Yi may have made decisions that Canel vehemently disagreed with, but holding difficult conversations, changing a final assignment, reassessing a grading rubric, and giving bad grades is not conduct that "go[es] beyond all possible bounds of decency" such that it would be "regarded as intolerable in a civilized community." *Id.* at 628; *see also Watanabe v. Loyola Univ. of Chicago*, No. 99 C 4820, 2000 WL 876983, at *6 (N.D. Ill. July 3, 2000) ("Giving a student a negative evaluation, especially if it is true, does not form the basis for an IIED claim."). Yi teaches an art

4

therapy class, which necessarily entails difficult, emotional, and even hurtful discussions at times. Even if she made choices that disadvantaged Canel, allegedly "inconsiderate, rude, vulgar, uncooperative, unprofessional and unfair" conduct cannot support an IIED claim. *Totten v. Benedictine Univ.*, No. 20 C 6107, 2021 WL 3290926, at *12 (N.D. Ill. Aug. 2, 2021) (quoting *Oates v. Discovery Zone*, 116 F.3d 1161, 1174 (7th Cir. 1997)). Once Canel's allegations of discrimination are removed, the Court finds that Canel, at most, alleges that Yi acted inconsiderately, rudely, uncooperatively, unprofessionally, or unjustly. The Court therefore finds that "there is no independent basis for the action apart from the [IHRA] itself," and Canel's IIED claim is preempted by the IHRA. *Maksimovic*, 687 N.Ed. 2d at 23.

Under the terms of the IHRA, the Court therefore lacks jurisdiction over Canel's IIED claim against Yi, and her claim must be dismissed. In the event that Canel can amend her Complaint to include additional allegations to demonstrate extreme and outrageous conduct by Yi—without reference to any purported civil rights violations—the dismissal is without prejudice.

## Conclusion

For the foregoing reasons, the Court grants Yi's motion to dismiss. Canel's claim for IIED against Yi is dismissed without prejudice. By August 7, 2024, Canel may amend her Complaint.

ENTERED: 7/10/24

_____
Nancy L. Maldonado
United States District Court Judge